# COMMONWEALTH *vs.* JOSE SPRINGER.

No. 97-P-1795.

Worcester. June 2, 1999. - June 20, 2000.

Present: BROWN, SMITH, & SPINA, JJ.[1]

*Homicide. Joint Enterprise. Malice. Practice, Criminal,* Argument by prosecu-
tor, Comment by prosecutor, Instructions to jury.

At the trial of indictments, the Commonwealth introduced sufficient evidence
to warrant the jury to find, beyond a reasonable doubt, that the defendant
was guilty of second degree murder and assault and battery by means of a
dangerous weapon, both on a joint venture theory. [472-474]
A prosecutor's comment in closing argument, "I ask you not to free a guilty
man," was, in the context of the entire argument, not improper, and
prejudice, if any, was cured by the judge's instructions. [475-476]
There was no merit to a criminal defendant's claim that the prosecutor implied
in closing argument that he had evidence of the defendant's guilt in addi-
tion to the evidence introduced at trial. [476]
No substantial risk of a miscarriage of justice arose at a criminal trial from the
prosecutor's comments on the defendant's credibility [476-477] or on a
prior inconsistent statement of a witness [477].
A prosecutor's improper comment on the defendant's prearrest silence did not
create a substantial risk of a miscarriage of justice, where it was vague and
fleeting and where the judge properly instructed the jury. [477-478] BROWN,
J., concurring.
There was no merit to a criminal defendant's claims that the prosecutor
referred in closing argument to facts not in evidence [478], or that the
prosecutor injected racial overtones into the case [478-479].
A prosecutor's improper reference in closing argument to testimony that had
been excluded from the jury's consideration did not create a substantial
risk of a miscarriage of justice, where that evidence was not prejudicial to
the defendant's case. [479-480] BROWN, J., concurring.
At a murder trial, the prosecutor's comment on the elements of murder was
not improper in the context of the argument as a whole, and, in any event,
the judge properly instructed the jury. [480]
At a murder trial the prosecutor's invocation of sympathy for the victim

---

[1]This case was argued before Justices Brown, Smith, and Spina. Following
the appointment of Justice Spina as an Associate Justice of the Supreme
Judicial Court, Justice Gelinas was added to the panel and participated in this
decision.

would better have been left unsaid, but any error was mitigated by the
judge's explicit instructions to the jury that their verdict was not to be
based on sympathy. [480-481] Brown, J., concurring.

At a murder trial, the judge's instructions gave the jury a clear distinction
between murder and manslaughter. [481]

At the trial of a murder indictment, there was no error in the judge's instruc-
tions to the jury on joint venture. [481-483]


Indictments found and returned in the Superior Court Depart-
ment on September 8, 1995.

The cases were tried before *Regina L. Quinlan*, J.

*Ruth Greenberg* for the defendant.

*Anne S. Manzello*, Assistant District Attorney, for the
Commonwealth.

Smith, J. A Worcester County grand jury indicted the
defendant for murder in the first degree and for assault and bat-
tery by means of a dangerous weapon, to wit: a rock and a bat.
At trial, the Commonwealth presented two theories of murder in
the first degree: (1) premeditation and (2) extreme atrocity or
cruelty. The jury returned guilty verdicts of murder in the second
degree and assault and battery by means of a dangerous weapon
(the bat).

On appeal, the defendant claims that the judge committed er-
ror (1) in denying the defendant's motion for a required finding
of not guilty and (2) in certain of her instructions to the jury.
The defendant also claims that the prosecutor's closing argu-
ment was so egregious that it amounted to reversible error.

The jury could find the following facts. During the late
evening hours of April 24, 1994, Shaun Sims and Justine Del-
negro drove with another person (Jessica) to Providence, Rhode
Island, where the defendant lived. All four then returned to Jes-
sica's apartment in Worcester.[2]

Meanwhile, during the early morning hours of April 25, 1994,
the victim, Rolland Allard, was drinking with his girlfriend at
the Pleasant Café in Worcester. The two left the café around
1:00 A.M., but the girlfriend returned about twenty-five minutes
later and told the bartender she had an argument with the victim
and needed a ride home.

At about the same time, Sims and Delnegro left Jessica's

---

[2]Delnegro testified on behalf of the Commonwealth, pursuant to an agree-
ment that she would be charged only with accessory after the fact to murder.

apartment without the defendant and drove around the city. Near the downtown library, the victim walked in front of their car, forcing Sims abruptly to apply his brakes in order to avoid hitting him. The victim then approached the car and requested a light for his cigarette; Sims and Delnegro did not know him. The victim and Sims began talking, and Sims asked him to get in the car, which he did. The three then drove to Crompton Park, where Sims and Delnegro got out of the car and had a conversation away from the victim. Sims told Delnegro that he wanted to show her what type of person he was and what he was capable of doing, and stated, "I'm going to do this guy up." He then said that he was going to pick up the defendant.

Sims and Delnegro returned to the car, and with the victim, drove to a pay phone on Main Street where Sims got out of the car and made a telephone call. From there, they drove to Jessica's apartment where they met the defendant.[3] When the defendant appeared downstairs Delnegro asked him what was going on, to which he replied, "Don't worry about it, get in the car." The four then drove to Whipple Street where Sims, who had been driving, nearly hit some bushes. Thereafter, Delnegro drove the vehicle. While in the car, the four discussed going to a keg party in the woods. Sims directed Delnegro where to drive; they went behind the Maplewood Apartment Complex where Delnegro parked next to a dumpster. Sims directed everyone to get out of the car. Delnegro wanted to stay behind, but Sims would not let her. Sims retrieved a wooden baseball bat from the trunk of the car and held it at his side.

Sims, the defendant, and the victim began walking into the woods with Delnegro following behind. The men then stopped. Delnegro was approximately fifty feet away; she had purposely kept her distance because she believed something was going to happen. Sims swung the baseball bat and hit the victim in the back of the head. The victim fell to the ground and said, "Why are you doing this to me?" When Sims wound up for a second swing, Delnegro turned away to return to the car, but nevertheless heard the victim being hit three or four more times, and heard him moaning.

---

[3]Jessica's apartment, which was on the second floor, did not have any windows that viewed the street where Sims had parked the car. At Sims's direction, Delnegro got out and rang the buzzer and, without anyone speaking to any person inside the apartment, the defendant emerged and got into the car.

Several minutes later, Sims and the defendant returned to the vehicle. Sims got into the front passenger seat and the defendant sat in back. They acted as if what they had done did not bother them. Sims, who was still holding the bat, told Delnegro to drive. As they drove away, Sims told Delnegro that he had hit the victim with the bat and that the defendant had "finished the job" by dropping a large rock on the victim's head. The defendant said that, when the rock hit, he heard a "big splat" which he thought was the victim's brain.[4] Sims pointed to the location on the bat where he had hit the victim, although Delnegro did not notice any wet spots or blood on it. Delnegro indicated to the men that she did not want anything to do with what had transpired, at which point Sims and the defendant told Delnegro that if she told anyone about the killing they would pin the blame on her. The three then proceeded to Vernon Park in Worcester where Sims threw the bat out of the window.

Later that same day, the victim's body was found in the woods. According to the medical examiner, the victim had died from multiple skull fractures. The medical examiner testified that the victim's death could have been caused by either the rock being dropped on his head or multiple blows with the baseball bat.

Fifteen months later, the Worcester police spoke with the defendant in Providence, Rhode Island. He admitted to being in the car with Sims, Delnegro, and the victim, but he claimed to have remained there while the other three went to the keg party in the woods.

We now discuss the issues raised by the defendant.

A. *Sufficiency of the evidence.* It was the Commonwealth's theory at trial that the defendant either was a principal in the murder (and the assault and battery with a dangerous weapon), by dropping a rock on the victim's head, or engaged in a joint venture with Sims to commit those crimes, or both. The jury, by its verdict, rejected the Commonwealth's theory that the defendant was a principal and instead convicted him on the joint venture theory of second degree murder as well as assault and battery by means of a dangerous weapon.[5]

---

[4]The police found a thirty-six pound rock lying near the victim's head. There were indications from the ground that it had been brought from its original location nearby, and subsequently came to rest where it was found.

[5]The verdict slip for the indictment charging assault and battery by means

The defendant claims that the Commonwealth introduced insufficient evidence to warrant the jury finding him guilty of both crimes. Rather, he argues that the evidence, at most, was sufficient only to show that he was guilty of being an accessory after the fact. Using the usual standard for considering such claims, see *Commonwealth* v. *Semedo*, 422 Mass. 716, 719 (1996), we hold that the Commonwealth did indeed introduce sufficient evidence to warrant the jury to find, beyond a reasonable doubt, that the defendant was guilty of both crimes.[6]

"A joint venturer, is 'one who aids, commands, counsels, or encourages [the] commission of a crime while sharing with the principal the mental state required for the crime.' " *Commonwealth* v. *Stewart*, 411 Mass. 345, 350 (1991), quoting from *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). "To convict a defendant of [a crime] on a joint venture theory, the Commonwealth must establish that the defendant 'was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement [was] willing and available to help the other if necessary.' " *Commonwealth* v. *Chipman*, 418 Mass. 262, 268 (1994), quoting from *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983).

There was ample evidence here that the defendant was present at the scene of the crime. The defendant argues, however, that there was no evidence that (1) he had the requisite knowledge that Sims intended to murder the victim and (2) he agreed to help him.

Delnegro testified that Sims told her of his plan "to do [the victim] up," and that he intended to "go get" the defendant. Sims then made a telephone call, and a reasonable inference can

of a dangerous weapon stated that, if the jury found the defendant guilty of that charge, they were to specify the dangerous weapon: i.e., whether it was a rock, a bat, or both. The jury wrote the word "bat" on the verdict slip indicating that it was the dangerous weapon. The parties read the answer to mean that the jury found the defendant not guilty as a principal but guilty as a joint venturer.

[6]The defendant argues that Delnegro's testimony was "unreliable." However, "[w]hen assessing the sufficiency of the evidence, we resolve issues of credibility in favor of the Commonwealth; '[i]t does not matter that some of the evidence could be characterized as equivocal or contradictory.' " *Commonwealth* v. *James*, 424 Mass. 770, 785 (1997), quoting from *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991).

be drawn from the evidence that he telephoned the defendant because the defendant was waiting for Sims when he and Delnegro arrived outside the apartment building. See note 3, *supra*. Further, there was evidence that the defendant knew Sims was holding a baseball bat when they walked into the woods with the victim because he was present when Sims removed it from the trunk of the car. Therefore, a jury could reasonably infer that Sims planned to kill the victim, told the defendant of his scheme during the telephone call, and the defendant agreed to assist Sims, if necessary.

The jury could also reasonably infer from the above evidence that the defendant shared the necessary mental state. "The mental state required for murder is malice aforethought. Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim. [It] may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Semedo, supra* at 720.

Here, once the defendant returned to the car after participating in the crime, his demeanor indicated that what had transpired did not bother him in the least. That fact, in addition to the evidence recited above, raises a reasonable inference that the defendant did indeed have the requisite malice aforethought.

Accordingly, we hold that the judge did not err in denying the defendant's motion for a required finding of not guilty and in instructing the jury on joint venture.

B. *The prosecutor's closing argument.* On appeal, the defendant asserts that the prosecutor's remarks in his closing argument created reversible error, namely by (1) expressing his personal belief as to the defendant's guilt; (2) shifting the burden of proof from the prosecution to the defendant; (3) commenting on a prior inconsistent statement; (4) referring to facts not in evidence; (5) commenting on the defendant's prearrest silence; (6) interjecting racial overtones into the case; (7) referring to Sims's guilty plea to manslaughter; (8) misstating the elements of murder; and (9) improperly soliciting sympathy for the victim.

The prosecutor's argument was unorganized, rambling, and clearly not well-prepared. "We remind prosecutors again that '[a]dvance preparation would eliminate from our consideration

most aspects of closing arguments constantly being urged as improper.' " *Commonwealth* v. *Phoenix*, 409 Mass. 408, 428 (1991), quoting from *Commonwealth* v. *Smith*, 387 Mass. 900, 903 (1983), quoting from *Commonwealth* v. *Haas*, 373 Mass. 545, 557 (1977). Nevertheless, the fact that the prosecutor's closing argument is ill-prepared, by itself, does not require reversal. "We review the prosecutor's remarks in the context of his entire closing argument, the judge's instructions to the jury, and the evidence produced at trial." *Commonwealth* v. *Lyons*, 426 Mass. 466, 471 (1998).

1. *The prosecutor expressed his personal belief in the defendant's guilt and suggested he had undisclosed evidence.* In his closing argument, the prosecutor stated, "I ask you not to free a guilty man." The judge overruled the defendant's objection.

Although he refers to this remark in his brief, the defendant neglects to argue why this statement was improper or objectionable. The defendant's failure to do so constitutes a waiver of that argument. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Commonwealth* v. *Salcedo*, 405 Mass. 346, 351 (1989) (one-sentence paragraph alleging error "does not rise to the level of appellate argument, as required by Mass.R.A.P. 16[a][4], as amended, 367 Mass. 921 [1975]").

Nevertheless, it can be adduced from his objection during trial that the defendant believes the statement was an improper expression of the prosecutor's personal opinion concerning the defendant's guilt. "It is undisputed that during his argument the prosecutor is prohibited from expressing any personal belief as to the defendant's guilt." *Commonwealth* v. *Howell*, 394 Mass. 654, 661 (1985). Here, in the context in which the comment was made, we think it was no more than a request by the prosecutor that the jury find the defendant guilty based upon all of the evidence. We note that the comment did not "interject[] [any] extraneous material or belief but expressed the prosecutor's view of the strength of the evidence." *Commonwealth* v. *Smith*, *supra* at 907. When viewed within the context of the entire argument, the comment was proper.

Moreover, the judge, clearly in response to the defendant's objection, specifically instructed the jury in her main charge "that the verdict and the decision of whether this defendant has been proven guilty is yours and yours alone. Anyone else's opinion has absolutely no bearing because the decision and the

only decision that counts is yours." Thus, the judge's instruction removed any prejudice from the error, if there was one.

The defendant also claims that the prosecutor implied in his closing argument that he had access to other evidence of the defendant's guilt in addition to the evidence introduced at trial. The prosecutor's challenged comment stated, "without Delnegro, I would suggest we'd go to trial with other evidence and what [the defendant's] statement says about himself."

Viewed in the context in which it was made, the prosecutor was not implying that there was other undisclosed evidence, but, rather, he was arguing that the Commonwealth had proved its case even without Delnegro's testimony, based upon the other evidence introduced at trial and the damage the defendant caused himself by the numerous discrepancies in his statement to the police.

2. *Other claims concerning prosecutor's closing argument raised on appeal.* At trial, there were no other objections to the prosecutor's closing argument. Although not dispositive, we consider the absence of objections to be "some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995) (citations omitted). Further, because there was no objection, if we find that any of the prosecutor's comments were error, we consider only whether it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Stewart*, 411 Mass. 345, 356-357 (1991).

a. *Prosecutor shifted burden of proof.* In his closing argument, the prosecutor commented on the defendant's statement to the police that, when he and the others arrived at the scene of the alleged keg party in the woods, the defendant decided to remain in the car. The prosecutor stated, "[t]hat's what you have to believe to acquit this man. If you believe that, folks, by all means acquit him." There was no objection to the remark. The defendant argues that the prosecutor's comment shifted the burden of proof to the defendant.

Considering the prosecutor's comment in the context of the entire argument, it appears to have been an observation on the weakness of the defendant's statement to the police denying that he was present in the woods when Sims hit the victim with the bat. See *Commonwealth* v. *Good*, 409 Mass. 612, 624-625 (1991).

In any event, if the comment was error, it did not create a

substantial risk of a miscarriage of justice in light of the judge's clear and direct instructions on the presumption of innocence and the Commonwealth's burden to prove its case beyond a reasonable doubt.

b. *Prosecutor urged jury to consider prior inconsistent statement as substantive evidence.* The prosecutor commented to the jury, "[d]id [Delnegro] see any rock really drop? She says no. She told Officer Couture something else a year ago. . . . I'm sure that perked up your ears."

The defendant in a one-sentence argument states that the prosecutor committed error because he encouraged the jury to consider the prior statement that Delnegro made to Couture as substantive evidence.

The defendant's argument is conclusory in nature and lacks any articulated reasoning; we therefore reject the claim because it does not meet the requirements of Mass.R.A.P. 16(a)(4). *Commonwealth* v. *Montez,* 45 Mass. App. Ct. 802, 807-808 n.2 (1998).

Moreover, the defendant did not object to the comment during the trial and the judge instructed the jury on the proper use of a prior inconsistent statement. Therefore, even if the comment was error, it did not constitute a substantial risk of a miscarriage of justice.

c. *Prosecutor commented on defendant's prearrest silence.* The defendant claims that the prosecutor committed reversible error when he argued that if the defendant had really just remained in the car instead of walking into the woods with Delnegro, Sims, and the victim, "he ha[d] some obligation to come forth and call the Worcester police."

The Commonwealth argues that the prosecutor was merely expressing his incredulity at the defendant's statement to the police that he remained in the car while Sims, Delnegro, and the victim walked into the woods. The Commonwealth further asserts that, in the circumstances present here, it was permissible for the prosecutor to argue that the jury could consider the defendant's failure to come forward with information when it would have been natural for him to go to the police. See *Commonwealth* v. *Barnoski,* 418 Mass. 523, 536-537 (1994) (during cross-examination, prosecutor properly inquired about defendant's failure to contact police to inform them that his friend had been shot when, if he was not involved, it would have been natural for him to do so).

We think that the remark should not have been made because it comes too close to being an improper comment concerning the defendant's prearrest silence. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 60 (1982) (trial judge committed reversible error in instructing the jury that they could use defendant's prearrest silence to impeach him). However, no substantial risk of a miscarriage of justice occurred because the reference "was a vague and fleeting comment, not likely to influence, or even to seize the attention of the jury." *Commonwealth* v. *Johnson*, 32 Mass. App. Ct. 989, 992 (1992), quoting from *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983). Moreover, the judge properly instructed the jury not to draw any inference from the defendant's failure to testify, and that closing arguments of counsel were not evidence.

d. *Prosecutor referred to facts not in evidence.* The defendant claims that the prosecutor improperly encouraged the jury to speculate about certain matters not in evidence.

"[P]rosecutors are entitled to marshal the evidence and suggest inferences that the jury may draw from it." *Commonwealth* v. *Dinkins*, 415 Mass. 715, 725 (1993), quoting from *Commonwealth* v. *Drayton*, 386 Mass. 39, 52 (1982). "The inferences suggested by the prosecutor need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Dinkins, supra* at 725.

We have examined each of the defendant's claims in regard to this issue and rule that the prosecutor's comments were based on the evidence before the jury, including reasonable inferences that the jury could draw from it.

e. *Prosecutor injected racial overtones into case.* During the course of Delnegro's testimony the prosecutor, with the permission of the judge, had Sims brought into the courtroom. While there, Sims was ordered to stand and the prosecutor asked Delnegro if Sims was the same size as he was the night of the crime. Delnegro responded that he appeared to be heavier.

The defendant argues that the prosecutor injected racial overtones into the case because he brought Sims into the courtroom so that the jury could see that Sims, like the defendant, is black while Delnegro is white. The defendant claims that the prosecutor also made a covert appeal to racial prejudice by making repeated references to Sims's and the defendant's sexual relations with Delnegro and other white

women, and Sims's abusive treatment of Delnegro. The defendant's claim is exaggerated.

In his closing argument, the prosecutor did not make any reference either express or implied to any person's race. He did comment on Sims's size and his relationship with Delnegro, but those comments were relevant.

Defense counsel, during his cross-examination of Delnegro, elicited testimony that Sims, among other things, abused women. Further, Delnegro's credibility was called into question by defense counsel's repeated references to the fact that she remained with Sims even after he told her that he was "going to do the victim up." The prosecutor properly argued that, because of his size and violent nature, Sims was able to retain control over Delnegro and that she felt compelled to remain in the car with him. Also, bringing Sims into court and having the jury see his size was relevant to the Commonwealth's theory of first degree murder based on extreme atrocity or cruelty. See *Commonwealth* v. *Cunneen*, 389 Mass. at 227 (factors that the jury can consider in deciding whether a murder was committed with extreme atrocity or cruelty include "extent of physical injuries, number of blows, manner and force with which delivered, instrument employed, and disproportion between the means needed to cause death and those employed"). Accordingly, because the prosecutor's arguments were relevant and not racially related, there was no error.

f. *Prosecutor's reference to Sims's guilty plea to manslaughter.* A witness for the Commonwealth was asked on cross-examination when she last saw Sims. The witness responded that she saw him when he pleaded guilty to manslaughter six or seven months before. The prosecutor then objected to defense counsel's questions concerning Sims's guilty plea and whether it was related to the case on trial. The judge sustained the objections.

In his closing argument, the prosecutor told the jury not to speculate as to why Sims had pleaded guilty to manslaughter. The defendant argues that the prosecutor's remark was error because it referred to evidence that had been excluded.

"A prosecutor is barred from referring in closing argument to a matter that has been excluded from evidence." *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 508 (1992). Here, although there

was evidence before the jury that Sims had pleaded guilty to manslaughter, the judge had excluded, at the prosecutor's request, any evidence that the guilty plea was related to the case on trial.

The prosecutor's comment was improper but it did not create a substantial risk of a miscarriage of justice. The judge had agreed, prior to the closing arguments, to charge the jury on the crime of manslaughter. It was not prejudicial to the defendant for the jury to learn that his coventurer was allowed to plead guilty to manslaughter. Further, Sims's guilty plea did not prejudice the defendant's theory at trial, namely, that he was present in the car but did not go into the woods where the victim was killed. *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 539 (1971) (jury's knowledge that the codefendant had pleaded guilty "was in no way inconsistent with the defendant's presentation of his defense to the jury").

g. *Prosecutor's erroneous reference to the elements of murder.* The defendant claims that the prosecutor misstated the elements of murder when he said, "if a death . . . results from that assault and battery, you got the murder."

The defendant takes the comment out of context. The prosecutor was merely arguing that given the type of assault and battery that allegedly occurred, namely, Sims hitting the victim with a bat and the defendant dropping a rock on the victim's head, the jury could infer a specific intent to kill, or at least knowledge on the defendant's part that there was a reasonable likelihood that death would occur. Further, the judge emphasized in her instructions that they must take the law from her and not from counsel, and she properly instructed the jury several times on the elements of murder.

h. *Prosecutor invoked sympathy for the victim.* The prosecutor argued that the victim was "innocent . . . released from all of the cares of the world as you know, he has been released from all life, all joy, all cry, drink, walking, breathing. . . . He's been deprived of the right to live. The right to liberty, the right to pursue happiness." The defendant argues that this argument is disfavored by *Commonwealth* v. *Palmariello*, 392 Mass. 126, 135 (1984).

It would have been better if the prosecutor had left the comment unsaid, but any error was mitigated by the judge's explicit instructions that the jury's verdict was not to be based on

sympathy. See *Commonwealth* v. *Gordon,* 422 Mass. 816, 831 (1996). "Furthermore, we assume that the jury have a reasonable measure of sophistication and are capable of sorting out hyperbole and speculation." *Commonwealth* v. *Marquetty,* 416 Mass. 445, 451 (1993). Indeed, the acquittal of the defendant on the charge of murder in the first degree on a theory of extreme atrocity or cruelty indicates that the jury was not unduly swayed by the prosecutor's remarks.

C. *The judge's instructions to the jury.* The defendant also contends that the judge made several errors in her instructions to the jury. We discuss each claim individually.

1. *The judge's instruction on manslaughter.* The defendant claims that the judge committed error in instructing the jury on manslaughter and that error, coupled with the prosecutor's erroneous reference to the elements of murder, resulted in a substantial risk of a miscarriage of justice. There was no objection to the instructions.

The judge did err in her instructions on manslaughter when she informed the jury that "one must have a specific intent to kill." However, the judge corrected herself on at least two separate occasions, stating that the Commonwealth did not have to prove a specific intent to kill. Also, the judge twice gave correct instructions on malice, both before and after the incorrect instructions. Therefore, the jury was given a clear distinction between murder and manslaughter.

2. *The judge's instructions on joint venture and related matters.* The defendant asserts that the judge committed various errors in her instructions with regard to joint venture and related matters. Specifically, he claims that (1) the judge's instructions on joint venture did not convey that there was a need for an agreement between the parties before the crime was committed; (2) the judge should have told the jury that Sims's voluntary intoxication could negate the defendant's culpability because of an inability to share the required mental state; and (3) the judge should have instructed that the defendant had to know Sims was armed with a dangerous weapon. There was no error.

The judge was not required to instruct that in order for a joint venture to be established there must be a prior agreement. " '[T]here is no need to prove an anticipatory compact between the parties to establish joint venture,' . . . if, 'at the climactic moment the parties consciously acted together in carrying out the criminal endeavor.' " *Commonwealth* v. *Sexton,* 425 Mass.

146, 152 (1997), quoting from *Commonwealth* v. *Young*, 35 Mass. App. Ct. 427, 435 (1993). Further, the judge's instructions that the Commonwealth must show that the defendant agreed to participate in the crimes, and that the defendant did indeed participate in some meaningful way, was deemed appropriate in *Commonwealth* v. *Pucillo*, 427 Mass. 108, 114 n.4 (1998).

Next, the defendant claims that the judge should have given an instruction in regard to the intoxication of his coventurer, Sims, because, according to the defendant, he cannot be convicted based on an agreement or shared intent without proof that the other party had the capacity to agree and share that intent. There was no objection to the judge's failure to give the instruction.

By making this claim, the defendant attempts to interject an additional element — proof of the capacity of the coventurer — into the elements of joint venture by analogizing the criminal theory of joint venture to the crime of conspiracy.

"The shared purpose of joint venturers in the commission of a substantive offense differs from the prior agreement to commit the offense that is the essence of a conspiracy." *Commonwealth* v. *DeCillis*, 41 Mass. App. Ct. 312, 314 (1996). Because the agreement is the crime, it has been suggested that conspiracy requires proof of a noncharged coconspirator's ability to agree and intent to carry out the unlawful purpose before the crime of conspiracy can be established. See *Commonwealth* v. *Themelis*, 22 Mass. App. Ct. 754, 757-761 (1986).

Under joint venture, however, where no such meeting of the minds is required, proper instructions focus on the defendant's mental state and do not require the Commonwealth to prove the coventurer's mental capacity. See, e.g., *Commonwealth* v. *Stewart*, 411 Mass. 345, 360 (1991). Further, even though the only other coventurer is acquitted, the other participant is not insulated from being found guilty. *Commonwealth* v. *Jones*, 403 Mass. 279, 290 (1988).

In any event, the evidence at trial did not justify a voluntary intoxication instruction in regard to Sims. "Voluntary intoxication instructions are not required where the evidence does not suggest a condition of 'debilitating intoxication' that could support a reasonable doubt as to whether a defendant was capable of forming the requisite criminal intent." *Commonwealth* v. *James*, 424 Mass. 770, 789 (1997). Here, there was evidence

that Sims had stopped drinking prior to returning to Worcester from Rhode Island, and his "actions and comments . . . throughout the episode strongly indicate[d] awareness of the relevant circumstances." *Commonwealth* v. *Souza*, 34 Mass. App. Ct. 436, 441 (1993).

Finally, the defendant claims that the judge failed to instruct the jury that in order to convict the defendant they had to determine first that he knew that Sims was armed. The defendant's citation to *Commonwealth* v. *Melendez*, 427 Mass. 214, 215-219 (1998), to support his claim is inapplicable to this matter. In *Melendez* and *Commonwealth* v. *Watson*, 388 Mass. 536, 544-545 (1983), the court held that an instruction that the defendant knew the coventurer was armed with a dangerous weapon was required because the defendants were charged with felony-murder, the underlying charge being armed robbery.

The basis for such an instruction, according to the court, was "[b]ecause the requisite intent in felony-murder cases is the intent to commit the underlying felony, the knowledge that the other was armed was required as an element of the felony of armed robbery and consequently as an element of felony-murder." *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 555 n.13 (1990).

Here, the defendant was not charged with felony-murder or armed robbery but, rather, murder based on extreme atrocity or cruelty, or premeditation. Therefore, "[i]t was not necessary that the jury be given instructions regarding the defendant's knowledge that the codefendants were armed because such knowledge was not essential to proof of the crime charged." *Id.* at 555.

In sum, because the judge's instructions adequately conveyed all the requirements for conviction under a joint venture theory, we need not apply the substantial risk of a miscarriage of justice standard.

We have reviewed all of the issues raised by the defendant. It was not a perfect trial but it was fair. Therefore, we affirm the judgments entered below.

*So ordered.*

BROWN, J. (concurring). The prosecutor's careless overreaching in final argument came dangerously close to constituting reversible error. "We remind [trial] counsel that we shall not tolerate misconduct by lawyers during the persuasion phase of a criminal trial." *Commonwealth* v. *Haas*, 373 Mass. 545, 557 (1977). See *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 12 (1980), and cases cited. Once again it is patently clear that some prosecutors are completely ignorant of our appellate courts' admonitions concerning closing arguments. See, e.g., *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 541 & n.10 (1991). See also *Commonwealth* v. *Loguidice*, 36 Mass. App. Ct. 940 (1994), and cases cited therein, *S.C.*, 420 Mass. 453 (1995). They are either unable or unwilling to steer their closing arguments within permissible bounds.[1] See *Commonwealth* v. *Earltop*, 372 Mass. 199, 205-206 & n.1 (1977) (Hennessey, C. J., concurring). See also *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 501-504 (1994) (Brown, J., dissenting).

Nearly twenty-five years ago Justice Braucher in *Commonwealth* v. *Redmond*, 370 Mass. 591, 597 (1976), chastised the trial prosecutor for "repeatedly and deliberately sail[ing] unnecessarily close to the wind," and reversed the defendant's conviction. Without rehearsing the painfully long list of flagrant violations of that wise admonition, I repeat my message to the Commonwealth attorneys in *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 367 & n.2 (1985) (Brown, J., concurring), *S.C.*, 399 Mass. 514 (1987), and in numerous other cases before and after — if the assistant district attorneys cannot get it right, get new assistants.[2]

---

[1]For what should be required reading for all trial prosecutors, see *Commonwealth* v. *Haas*, 373 Mass. at 557 & n.11.

[2]For a more effective remedy, see suggestion in *Commonwealth* v. *Dowdy*, 36 Mass. App. Ct. 495, 503 n.4 (1994) (Brown, J., dissenting).