## COMMONWEALTH vs. RICHARD D. NORTH.

No. 98-P-261.

Norfolk. May 7, 2001. - September 24, 2001.

Present: ARMSTRONG, C.J., GRASSO, & COWIN, JJ.

*Larceny. Practice, Criminal,* Double jeopardy, Instructions to jury, Presumptions and burden of proof, Loss of evidence by prosecution, Argument by prosecutor, Continuance, Assistance of counsel, Presence of defendant. *Constitutional Law,* Double jeopardy. *Due Process of Law,* Loss of evidence by prosecution.

A criminal defendant who defrauded four different families through a pyramid scheme of investments was properly convicted, consistent with Fifth Amendment double jeopardy principles and Massachusetts common law, on twenty separate indictments charging larceny by false pretenses, where the defendant committed a multitude of separate acts on different dates by differing artifices. [605-606]

At the trial of indictments charging larceny by false pretenses, arising out of the defendant's investment of his clients' money in a pyramid scheme, the judge's instructions, which properly explained the elements of the crime, did not deprive the defendant of the defense of an "honest but mistaken belief" as to his authority to invest his clients' money, or reduce the Commonwealth's burden of proof regarding the defendant's intent. [606-607]

At a criminal trial, the judge properly declined to instruct the jury that they could draw an adverse inference against the Commonwealth because it had lost or destroyed certain evidence, where the loss was not shown to be intentional, and where the evidence was of only marginal relevance. [607-609]

At a criminal trial, an adverse inference instruction was not warranted, and the defendant's right to compulsory process was not violated, where the police failed to provide, in response to a last minute subpoena, a witness whose testimony was, at most, of tangential relevance, given the palliative measures taken by the judge, which were reasonable and afforded the defendant the same opportunities to which he would have been entitled had the witness appeared. [609-610]

Certain comments by a prosecutor in closing argument at a criminal trial did not result in a substantial risk of a miscarriage of justice, in the context of the entire argument, the judge's instructions, and the evidence at trial. [610-611]

At a criminal trial, the defendant failed to demonstrate that the trial judge, in the circumstances, committed an abuse of discretion in denying the defendant's request for a continuance on the ground that defense counsel

had not had time to review all of the documents provided by the Commonwealth. [611-613]

At the trial of indictments charging larceny by false pretenses, arising out of the defendant's investment of his clients' money in a pyramid scheme, the defendant failed to demonstrate on appeal that defense counsel's alleged unpreparedness due to inadequacies in discovery worked a deprivation of counsel, where counsel effectively cross-examined witnesses and aired a defense of a good faith failure to provide a return on investments; nor did such alleged unpreparedness constitute ineffective assistance of counsel, where the implementation of a reasonable theory of defense was accompanied by improper tactics of counsel and the defendant designed to further an inappropriate trial and appellate strategy, and where there was no showing that defense counsel's performance deprived the defendant of an otherwise substantial ground of defense. [613-616]

At a criminal trial, the defendant's constitutional right to be present at trial was not violated by the defendant's removal from the courtroom following a repeated outburst, where the defendant had been warned that he would be removed if there was another outburst and that a mistrial might result from such removal, and where the defendant's outburst was disorderly, disruptive, disrespectful, and strategically calculated to convey to the jury that the defendant was not being afforded a fair trial. [616-618]

INDICTMENTS found and returned in the Superior Court Department on April 29, May 13, and June 13, 1994, respectively.

A motion for a continuance was heard by *Elizabeth Butler*, J., and the cases were tried before her.

*David J. Nathanson* for the defendant.

*Ellen McCusker Devlin*, Assistant District Attorney, for the Commonwealth.

GRASSO, J. Awaiting trial on twenty-two indictments for larceny by false pretenses, the defendant fled to Canada in September, 1994. Located in June of 1996 in Montreal, and living under an alias, the defendant was taken into custody. After trial, a jury returned a verdict of guilty upon all but one indictment.[1] On appeal, the defendant's principal contentions are that (1) trial counsel's performance was so deficient as to amount to a constitutional deprivation of counsel; and (2) the convictions and sentences upon twenty-one separate indictments violated the double jeopardy provisions of the Federal Constitution and State law. Other asserted errors include the judge's

---

[1]The indictments involved four different families and alleged thefts totaling over one million dollars. The only indictment upon which the defendant was found not guilty had alleged a theft of approximately $48,227.

denials of requests for a continuance; the defendant's removal from the courtroom following a repeated outburst; the judge's instruction regarding "power of attorney"; the judge's refusal to give an adverse inference instruction; the denial of the defendant's right to compulsory process; and the prosecutor's closing argument. We affirm.

1. *Background.* The jury were warranted in finding the following. From 1990 to 1994, the defendant defrauded four different families of more than one million dollars by means of a pyramid scheme of spurious investments, using money from newer investors to pay off, and fend off, earlier ones. To attract investors, the defendant promised a return more favorable than could be obtained safely elsewhere. A facade of lavish offices and an opulent lifestyle lent credibility to his scheme, leading investors to believe that the defendant was successful and that their monies were invested wisely and safely.

The defendant carefully tailored these artifices to meet the circumstances and the need for deception, making different false representations, oral and written, to attract investments, to encourage additional investments, and to keep at bay investors seeking all or some of their money. The proofs furnished to satisfy different investors of the legitimacy of their investments varied and included the creation on a laptop computer of false account statements in the investor's name bearing watermarks of well-known investment firms. In fact, the defendant was using investors' money both to fund his own lifestyle and investments and to maintain the pyramid scheme. When some of the defendant's own investments went sour, the scheme collapsed, leaving a wake of plundered savings, investment, and retirement accounts.

Investigation into the defendant's activities led to the execution of a search warrant at his offices. Afterwards, at the defendant's direction, he and his staff created and inserted into clients' files false forms and statements with the intention of substantiating the claim that the clients' monies had been invested in "guaranteed income contracts" secured by a building at 183 State Street in Boston, which the defendant had purchased and financed heavily.

2. *The separate indictments.* The defendant asserts that

because clients' monies were allegedly taken pursuant to a single larcenous scheme, he could not properly be convicted of more than four larcenies, one for each client. To hold otherwise, the defendant contends, would be to inflict multiple punishments for the same offense in violation of Fifth Amendment double jeopardy protection and Massachusetts common law. See *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 735-736 (1973). This contention is without merit.[2]

We recognize that the double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits imposing multiple punishments for the same offense. See *North Carolina* v. *Pearce*, 395 U.S. 711, 717 & n.11 (1969). But see *Department of Rev. of Montana* v. *Kurth Ranch*, 511 U.S. 767, 798-805 (1991) (Scalia, J., dissenting). In the present case, however, the defendant committed a multitude of separate acts on different dates by differing artifices. See *Commonwealth* v. *Lane*, 25 Mass. App. Ct. 1002, 1003 (1988). "It is not reasonable to believe that, in enacting [the larceny statute], the Legislature intended that a person who steals [a large sum of money by] separate takings is subject to no greater maximum penalty than is one who steals [a small amount from a victim] on one occasion." *Commonwealth* v. *Murray*, 401 Mass. 771, 774-775 (1988). This case is distinguishable from *Commonwealth* v. *Donovan*, 395 Mass. 20, 27-29 (1985), where although there were several different victims, the defendant committed only one act, superimposing a phony bank night deposit box over a real one.

3. *The judge's instructions and the defendant's right to compulsory process*. The defendant contends that the judge erred in giving and declining to give certain instructions[3] and

---

[2]Because we conclude that the defendant's argument is without merit, we need not address whether a claim that a defendant has been improperly convicted and sentenced more than once for the same crime may be raised, after arguably having been waived, see *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 735 (1973), or must be raised below, see *Commonwealth* v. *Donovan*, 395 Mass. 20, 27 (1985).

[3]We assume, without deciding, that the defendant's objections to the judge's proposed instructions preserved these issues for appeal.

that the defendant's right to compulsory process was abridged. We conclude that there was no error.

(a) *The larceny by false pretenses instruction.* The central issue at trial was whether the defendant had the intent to steal or merely had made some bad investments. The defendant argues that the judge's instruction on "power of attorney" deprived him of the defense of an "honest but mistaken belief" as to his authority and relieved the Commonwealth of its burden of proving an intent to commit larceny by false pretenses. Looked at as a whole, the judge's instructions properly explained the elements of larceny by false pretenses and focused the jury's attention on the Commonwealth's burden of proving the defendant's intent. The judge instructed the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant made a false statement, knowing or believing it to be false, with the intent that the victim would rely on the truth of the false statement; that the victim did in fact rely on the statement as true; and that as a result, the victim parted with property. See *Commonwealth* v. *Leonard*, 352 Mass. 636, 644-645 (1967); *Commonwealth* v. *Reske*, 43 Mass. App. Ct. 522, 524 (1997). The intent to induce by a false statement is the polar opposite of a good faith (but mistaken) belief in authority.

The instruction did not reduce the Commonwealth's burden of proof by suggesting that a power of attorney creates a fiduciary obligation, imposing on the defendant a greater obligation to tell the truth. The judge's instruction that a "power of attorney does not, without more, authorize the agent to appropriate the principal's monies to the agent's own use" was correct and did not prevent the defendant from arguing, or the jury from concluding, that the defendant believed that the lawful authority existed to invest clients' money in such things as operating expenses for his companies, or that the defendant had an honest but mistaken belief as to his authority to do so. Cf. *Commonwealth* v. *Althause*, 207 Mass. 32, 51 (1910). This is not a case where the defendant was convicted on a state of mind less culpable than required. See, e.g., *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 396-397 (1998).

(b) *The judge's refusal to instruct on adverse inference and the defendant's right to compulsory process.* At trial, the Com-

monwealth presented the defendant's flight while on bail and under electronic monitoring as evidence of consciousness of guilt. To counter, and to corroborate the defendant's own testimony that this flight was inspired by fear for his safety and that of his family, the defendant sought to introduce two separate pieces of evidence: (1) an audiotape seized from the defendant's motor vehicle during execution of a search warrant on May 28, 1993; and (2) threatening letters and an audiotape of a threat allegedly received on the defendant's home telephone during July, 1994.

(i) *The audiotape from the defendant's motor vehicle.* During trial, the parties learned for the first time that the audiotape seized from the defendant's vehicle had been inadvertently taped over while in the custody of the Massachusetts State Police. The judge allowed the police to testify as to the contents of the tape,[4] but declined to instruct the jury, as the defendant requested, that they could draw an adverse inference against the Commonwealth because it had lost or destroyed evidence. The defendant posits that the judge's palliative measures were insufficient because the jury were deprived of hearing the fear-inspiring intonation, volume, and quality of the voice on the tape.[5] We discern no error.

The judge appropriately considered and applied the balancing test set forth in *Commonwealth* v. *Willie*, 400 Mass. 427, 432 (1987). *Willie* requires that a defendant first demonstrate that the lost or destroyed evidence was potentially exculpatory. See *ibid.* Upon such a showing, the court must consider the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant. See *id.* at 432-433. Here, the record supports the judge's conclusion that the erasure was accidental, not intentional, and that the tape was only marginally probative. The tape was not relevant to disproving

---

[4]Massachusetts State Police Sergeant Lowell, who listened to the tape before it was accidentally erased on or about June 4, 1993, testified that it contained a muffled male voice stating, in substance, "I know where you live and/or I know where your children are."

[5]The defendant testified at length regarding the number of threats, written and oral, to himself and to his family in the months preceding his flight to Canada. During this testimony the defendant was able to describe the intonation, volume, and quality of the voice on the tape, as well as its effect.

an element of the offense or to establishing a defense. Additionally, the lapse of time between May, 1993, and the defendant's flight in September, 1994, made the tape only marginally relevant to rebutting the consciousness of guilt inference arising from his flight to Canada. Admitting Sergeant Lowell's testimony was an appropriate remedy that apprised the jury of the content of the tape and alleviated any potential prejudice. See *Commonwealth* v. *Noonan*, 48 Mass. App. Ct. 356, 360-361 (1999). See also *Commonwealth* v. *Harwood*, 432 Mass. 290, 302 (2000). Compare *Commonwealth* v. *Sasville*, 35 Mass. App. Ct. 15, 27-28 (1993).

(ii) *The threatening letters and home telephone audiotape.* The defendant also sought to introduce threatening letters he allegedly received and an audiotape of threats allegedly made to his home telephone, items the defendant had turned over to the Duxbury police in July, 1994. On the last day of trial, the Duxbury police failed to appear in response to a summons, issued only the night before. The prosecutor informed the judge that the Duxbury police could not locate the case file (presumed to contain the original letters and the tape) and that the officer with knowledge of the file's whereabouts was on vacation and not expected back for over a week. Recognizing that the tape would likely be inadmissible absent authentication by the telephone company, the judge declined to continue the trial until the officer's return.[6] However, the judge admitted copies of threatening letters as the next best evidence.

There was no error in the judge's refusal to give an adverse inference instruction, and there was no violation of the defendant's right to compulsory process. The measures taken by the judge were reasonable and afforded the defendant the same opportunities to which he would have been entitled had the wit-

---

[6]The alleged threats to the defendant's home telephone were recorded on a messaging system maintained by the telephone company rather than upon a conventional home telephone answering device. Prior to the defendant's flight to Canada, an earlier discovery order had directed the telephone company to preserve and provide a copy of the tape to the defendant's then counsel. Whether the tape the defendant provided to the Duxbury police was an original or a copy of the recording maintained by the telephone company is not clear from the record.

ness appeared.[7] The judge was not required to continue the trial, already lengthy, to await a witness whose testimony was, at most, tangential. In any event, the jury likely were influenced by the inherent contradiction in the defendant's own testimony as to the flight: ostensibly fleeing because of fear for himself and his family, the defendant never called or inquired about his family's well-being during the many months spent living in Canada. See *Commonwealth* v. *Shipps*, 399 Mass. 820, 836-837 (1987).

4. *The prosecutor's closing argument.* The defendant contends that the prosecutor (1) impermissibly equated the defendant with a notorious criminal by referring to a "Ponzi" scheme; (2) impermissibly injected the prosecutor's own credibility into the case by claiming to be truly representing all the people of the Commonwealth; and (3) improperly admonished the jury that they represented in their deliberations "all of the people all of the time."[8] No objection was lodged. The absence of objection is some indication that the tone and manner of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial. See *Commonwealth* v. *Springer*, 49 Mass. App. Ct. 469, 476 (2000). Moreover, because there was no objection, our review of the prosecutor's comments is limited to whether any error occurred that results in a substantial risk of a miscarriage of justice. See *ibid.*

The use of the term "Ponzi scheme" was not improper, but a shorthand description for a pyramid scheme that has become part of lexicon.[9] See *United States* v. *Rude*, 88 F.3d 1538, 1547 (9th Cir. 1996), cert. denied, 519 U.S. 1058 (1997) (upholding

---

[7]The jury heard more about the content of the tape than it should have. In spite of a ruling by the judge requiring a voir dire prior to the jury's hearing about the content of the tape, defense counsel elicited such testimony from the defendant prematurely.

[8]The prosecutor said, "you know, P.T. Barnum . . . he said that 'You can fool all of the people some of the time and you can fool some of the people all of the time, but you can't fool all of the people all of the time.' And I suggest to you, this case . . . is on that third proposition of P.T. Barnum. You represent all of the people all of the time in your deliberations."

[9]"An investment swindle in which high profits are promised from fictitious sources and early investors are paid off with funds from later ones." American Heritage Dictionary 1407 (3d ed. 1996). "A fraudulent investment scheme in which money contributed by later investors generates artificially high

prosecutor's use of the term "Ponzi scheme"). In the context of the entire argument, the judge's instructions, and the evidence at trial, the other claimed errors also do not warrant reversal. See *Commonwealth* v. *Freeman*, 430 Mass. 111, 118 (1999). The P.T. Barnum reference did not suggest to the jurors that they may be required to explain their verdict to anyone. Compare *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 754 (1986). The unfortunate hyperbole of the prosecutor that "there are very few cases that a prosecutor presents to a jury in which you really get the feeling that you are representing the Commonwealth in the sense of the definition of Commonwealth" carried an aroma of personal belief in the case and should have been left unsaid. Nevertheless, "[w]e assume that the jury have a sufficient measure of sophistication to screen out a degree of hyperbole." *Commonwealth* v. *Andrade*, 422 Mass. 236, 244 n.9 (1996). See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 451 (1993). Assuming, without deciding, that these remarks constituted error, we do not consider them to have created a substantial risk of a miscarriage of justice.

5. *The denial of requests for a continuance and the effectiveness of counsel.*

(a) *The court's denial of requests for a continuance.* In September of 1994, while discovery was ongoing, the defendant fled to Canada via Vermont, taking along many client files. Upon returning to Massachusetts in July of 1996, the defendant appeared before the court with new counsel. Between July, 1996, and the commencement of trial on November 7, 1996, the parties appeared before the court numerous times to address discovery and other pretrial matters. On November 5, two days prior to trial, the defendant's trial counsel sought a continuance because of asserted noncompliance by the Commonwealth in discovery, particularly its failure to provide copies of all the documents the Commonwealth might use during its case-in-chief. The trial judge, who as motion judge had considered various discovery disputes in previous weeks, denied the motion,

dividends for the original investors, whose example attracts even larger investments . . . Cf. Pyramid Scheme." Black's Law Dictionary 1180 (7th ed. 1999).

observing that counsel had had access to the documents since at least September 23.[10]

Whether a motion for a continuance should be allowed is within the sound discretion of the judge, whose action will not be disturbed unless there has been a patent abuse of that discretion. See *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 517-518 (1972). See also *Commonwealth* v. *Bryer*, 398 Mass. 9, 15 (1986) ("We will not disturb a decision to deny a continuance unless it is shown to be arbitrary"); *Commonwealth* v. *Shea*, 38 Mass. App. Ct. 7, 9 (1995). Of course, the trial judge may not exercise that discretion in such a way as to impair the defendant's constitutional right to counsel who has had reasonable opportunity to prepare a defense. See *Commonwealth* v. *Miles*, 420 Mass. 67, 85 (1995), citing *Commonwealth* v. *Souza*, 397 Mass. 236, 240 (1986). This court will examine the circumstances of each case, particularly the reasons presented to the trial judge. See *Commonwealth* v. *Miles*, *supra* at 85. In considering the need for a continuance, the judge should balance the "need for additional time against the increased costs, including prejudice to the victim[s], taking into account also 'the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy.' " See *Commonwealth* v. *Jordan*, 49 Mass. App. Ct. 802, 812 (2000), quoting from *Commonwealth* v. *Chavis*, 415 Mass. 703, 711 (1993).

We discern here no abuse of discretion or other error of law. The judge had been involved with the case for some time and was well acquainted with the proceedings and the discovery issues. On September 23, 1996, the judge specifically advised counsel of the judge's determination to keep control of the case, and after hearing argument that some of the victims were elderly and in ill health, the judge scheduled a firm trial date of November 7. The judge was aware that trial counsel had entered an appearance a few weeks prior to September 23, 1996, and that counsel was also representing the defendant on similar indictments in Suffolk County.

In denying the requests for a continuance, the judge focused

---

[10]At a discovery hearing on September 23, counsel had advised the court that every box of documents had been searched and examined.

appropriately on the essential reason advanced by defense counsel, that because the Commonwealth had failed to provide copies of all documents, defense counsel could not review them with the defendant. Prior discovery orders had directed the Commonwealth to bring the requested records to the courthouse so that the defendant and counsel could examine them together. By the time trial commenced, the trial judge and other judges had made every reasonable accommodation to insure that counsel and the defendant were prepared. The Commonwealth had been ordered to provide copies of certain documents to counsel; funds had been approved for copying others. The trial judge and earlier motion judges had arranged for a room in the courthouse in which the defendant and counsel could examine documents. While trial was ongoing, the judge adjusted the trial schedule repeatedly to accommodate the defendant's review of documents, recessing early on many days, beginning late on others, even suspending for four days during a long weekend. The judge noted, and the record supports, the effort to "ben[d] over backward" to accommodate the defendant's requests.

(b) *The effectiveness of counsel.* Intertwined with the contention that the trial judge erred in denying the defendant's continuance requests is the assertion that counsel's unpreparedness worked a deprivation of counsel or, alternatively, constituted ineffective assistance of counsel. The defendant first argues that he was deprived of counsel because (1) he was forced to trial with unprepared counsel; and (2) trial counsel's performance in failing to exercise peremptory challenges, in failing to make an opening statement, and in failing to cross-examine a number of witnesses was so deficient as to amount to deprivation of counsel. See *Perry* v. *Leeke,* 488 U.S. 272, 280 (1989) (actual or constructive denial of the assistance of counsel is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective).

The cases cited by the defendant do not support the proposition that he was actually or constructively deprived of counsel. See *Green* v. *Arn,* 809 F.2d 1257, 1263 (6th Cir. 1987), vacated and remanded, 484 U.S. 806 (1987), judgment reinstated, 839 F.2d 300 (1988), cert. denied, 488 U.S. 1034 (1989) (defense

counsel absented himself during the victim's cross-examination by counsel for a codefendant); *McKnight* v. *State*, 320 S.C. 356, 358-359 (1995). Here, counsel was present throughout the trial and effectively cross-examined key witnesses to demonstrate to the jury that some individuals, who had lost no money, had invested with the defendant because he was a money maker; others had knowingly given the defendant a power of attorney, and their losses were merely investment choices gone bad. The defendant concedes that the defense of a good faith failure to provide a return on investments was aired to the jury. Counsel's failure to exercise peremptory challenges or to make an opening statement did not amount to a deprivation of counsel. These were tactical decisions, matters of professional judgment within the realm of trial strategy. See, e.g., *Commonwealth* v. *Cohen*, 412 Mass. 375, 391 (1992). The latter is especially so, given an ostensible disagreement between counsel and the defendant as to whether the defendant should testify.

What the defendant's argument really reduces to is a claim of ineffective assistance of counsel. "A claim of ineffective assistance may be resolved on direct appeal of the defendant's conviction when the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). See *Commonwealth* v. *McLeod*, 39 Mass. App. Ct. 461, 462 n.2 (1995). Here, the record is ample and suggests to us, as it did to the trial judge, that counsel's performance, and the defendant's actions, represented a calculated strategy in which the defendant acquiesced, directly or tacitly, to obtain a material advantage before the jury, and, if necessary, an appellate court.[11]

In the course of jury selection, defense counsel exercised no challenges, asserting an inability to do so because of the Commonwealth's failure to provide adequate discovery. Thus began a familiar theme, repeated throughout the trial with numerous variations for the benefit not only of the appellate record, but

---

[11]Claims of ineffective assistance of counsel, at least in the first instance, should normally be advanced in the context of a motion for a new trial. See *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999). That this defendant chose not to hazard a new trial motion addressed to the trial judge may well be explained by the judge's extensive findings.

Commonwealth *v.* North.

also the jury, upon whom counsel's strategy could not have been lost — the defendant did not have the intent to defraud anyone, but had merely made some bad business investments, and because the Commonwealth had not provided the necessary documents, the defendant was at a disadvantage in presenting a defense.[12]

What emerges unmistakably from the record, developed by the trial judge with extraordinary patience in a lengthy and difficult trial, is that the defendant and counsel sought not only to impress upon the jury that the defendant did not have the intent to defraud, having himself been the victim of investments gone bad, but also that the defendant was being prosecuted unfairly because of having been denied access to the records upon which the Commonwealth was relying. As a second string to its bow, the defense sought to create appellate issues based upon these alleged inadequacies in discovery, the alleged ineffectiveness of counsel, and the defendant's unsuccessful efforts to discharge counsel during trial. As a last resort, the defendant attempted to provoke a mistrial by an orchestrated outburst causing his removal from the courtroom. (See discussion, *infra*).

Such a factual predicate does not pose a garden variety ineffective assistance of counsel claim. Typically, we consider whether counsel's performance fell measurably below that of reasonably competent counsel, thereby depriving the defendant of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Under the

---

[12]The strategy emerged even more transparently after the Commonwealth's opening statement. Defense counsel requested a "sidebar" conference to advise the judge, and apparently the jury with sufficient volume, that the defendant was unable to make an opening statement because of unfurnished discovery. Both the prosecutor and the judge nosed what was occurring. The judge observed that counsel's statements were misleading in that discovery materials had been available to the defense for some time and that counsel was embarking upon a strategy of creating an appellate issue.

To insure that the jury did not miss the point, defense counsel responded to the judge's inquiring whether the defendant wished to make an opening statement by stating: "I'm not in a position to open at this point for the reasons that I stated at side bar . . . ." Where a simple "not at this time" would have sufficed, it is clear that the jury was the object of counsel's response. Thereafter, the trial record is replete with instances where defense counsel objected to the introduction of documentary evidence or declined to cross-examine a witness "for reasons stated at sidebar."

first prong of *Saferian* we look to see whether counsel, together with the defendant, chose a trial strategy that was reasonable, and whether counsel's implementation of the strategy did not fall measurably short. The inquiry is complicated when, as the record here amply demonstrates, the theory of the defense (a good faith but mistaken belief in authority) was reasonable, but the implementation of the theory was accompanied by improper tactics of counsel and of the defendant designed to further an inappropriate trial/appellate strategy. In such an instance, the defendant cannot be heard to complain that counsel's performance fell short.

This is not a case where the record supports the view that the defendant is being punished for an attorney's errors. Compare *Commonwealth* v. *Sena*, 429 Mass. 590, 596 (1999). See *Commonwealth* v. *Pavao*, 423 Mass. 798, 804 (1996) (recognizing issue of whether conduct of counsel exceeded the bounds of acceptably zealous representation and should be subject to an explicit disciplinary rule). Based upon our review of the record, and in light of the clearly improper tactics of the defense, in which the defendant participated, we cannot conclude that the defendant was deprived of the effective assistance of counsel.

We are also satisfied that the defendant has failed to meet the second prong of the *Saferian* standard. There has been no showing that trial counsel's performance deprived the defendant of an otherwise available substantial ground of defense, *Commonwealth* v. *Saferian*, 366 Mass. at 96, or that better work might have accomplished something material for the defense. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). The evidence marshalled against the defendant was overwhelming. The varied misrepresentations, the creation of false statements and false files, and the circumstances of the defendant's flight from the jurisdiction left little doubt as to his guilt.

(c) *Removal of the defendant from the courtroom.* During the course of the trial, the defendant interrupted the proceedings in a manner that the trial judge found to be calculated to provoke a mistrial. On the first occasion, in the hearing of the jury, the defendant echoed defense counsel's request for additional time to examine a document, characterized for the jury's benefit as

"hundreds of pages." At sidebar, the judge directed defense counsel to instruct the defendant that further outbursts would result in removal from the courtroom.

The second occasion, occurring later the same day, followed defense counsel's statement about not being in a position to cross-examine a witness "for the reasons stated at sidebar." The defendant stated, in front of the jury, a desire for counsel to proceed with the cross-examination, but said that counsel was "declining because she [did] not have the discovery that she ha[d] asked for." The defendant also proclaimed, "I deserve a fair trial here," repeatedly spoke over the judge who was attempting to interrupt the outburst, and ignored the judge's directions to be seated.

The judge then directed that the defendant be removed from the courtroom until such time as he could behave appropriately. After a sidebar conference,[13] and prior to the Commonwealth resuming direct examination of one of the victims in the indictments, defense counsel stated in the presence of the jury: "Your Honor, for the record would you just note my objection to this without my client being present." The defendant returned to the courtroom a short time later.[14]

The defendant maintains that such removal contravened his constitutional right to be present during trial, see *Lewis* v. *United States*, 146 U.S. 370, 372 (1892), because (1) he was not warned by the judge about the possibility of being removed; and (2) his

---

[13]At sidebar, defense counsel related that during an earlier recess, the defendant had been advised of the court's warning not to speak out and had been warned about the possibility of a mistrial due to the defendant's conduct. Counsel also stated that the defendant had been told that counsel would not be cross-examining the witness and that this was in the defendant's best interest. The judge remarked that the defendant's conduct could be viewed "as a deliberate attempt on the defendant's part to provoke a mistrial as a last resort."

Similarly transparent were the defendant's attempts to discharge counsel and defense counsel's requests to withdraw and for mistrial. When the judge provided the defendant with an opportunity to articulate reasons for wanting to discharge counsel, the defendant's response was a generalized dissatisfaction with the amount of cross-examination and a request for a continuance to obtain a legal opinion on the right to proceed pro se.

[14]The number of minutes the defendant was absent from the courtroom is not discernable from the record. However, the defendant's absence was not lengthy, occupying only about thirteen pages of transcript.

conduct was not so disorderly, disruptive, and disrespectful that the trial could not be conducted with the defendant in the courtroom. See *Illinois* v. *Allen*, 397 U.S. 337, 343 (1970). The record establishes not only that counsel conveyed the judge's warning to the defendant but also that the defendant and counsel had discussed the implications of an outburst, including a possible mistrial, at a recess shortly before the second incident.

The defendant's outburst was disorderly, disruptive and disrespectful. Moreover, it was strategically calculated to convey to the jury that the defendant was not being afforded a fair trial because the prosecution was withholding discovery documents and, alternatively, as found by the judge, to provoke a mistrial in a case that was going badly.

The constitutional right to be present at trial can be forfeited where the defendant has been appropriately warned and continues the disruptive behavior despite such warning. See *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 751 (1981). See also *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 307 (1975). Here, the defendant's calculated strategy of inappropriate outbursts warranted removal as a counterbalance to the tactic of putting before the jury unsubstantiated allegations of prosecutorial misconduct and unfairness. See *id.* at 306-307. Moreover, the judge's handling of the defendant's removal was exemplary.[15] The judge firmly established that such tactics would not be countenanced, but promptly allowed the defendant the opportunity to return upon a promise of good behavior. In final instructions, the judge directed the jury that the "unexpected and spontaneous statements of the defendant one morning last week [were] not evidence." Far from being an improper comment, the judge's instructions appropriately counseled the jury not to consider the defendant's disruptive outburst in their deliberations.

*Judgments affirmed.*

---

[15]After only a few minutes, the judge sent a note through the court officers inquiring whether the defendant was prepared to come back and sit quietly. Upon receiving an affirmative reply, the judge directed that the defendant be returned to the courtroom.