COMMONWEALTH *vs.* BRIAN DONOVAN
(and thirteen companion cases[1]).

Hampden.  February 5, 1985. — May 28, 1985.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Disclosure of evidence, Indictment, Duplicitous convictions. *Larceny. Joint Enterprise.*

A criminal defendant was not entitled to a new trial on the ground that a list of prosecution witnesses submitted to the defense prior to trial failed to include the names of two "surprise" witnesses who later gave testimony implicating the defendant in certain crimes, where the delay in disclosing the existence of the witnesses was not caused by any bad faith of the prosecutor and where there was no showing that the defendant was prejudiced by the belated disclosure. [23-25]

At the trial of two defendants on indictments charging larceny, the evidence with respect to both the existence of the essential elements of the crime charged, and of the presence of a joint venture, was sufficient to warrant denial of the defendants' motions for required findings of not guilty. [25-27]

A larcenous scheme by two criminal defendants to place a false night deposit box on the wall of a single bank building, on a single evening, into which funds were later placed by seven would-be depositors, constituted a single crime, not seven distinct crimes, and, accordingly, this court ordered the dismissal of six of the seven indictments for larceny which had been brought against each defendant. [27-31]

INDICTMENTS found and returned in the Superior Court Department on December 17, 1981.

The cases were tried before *William W. Simons,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Philip X. Murray* for the defendants.

---

[1] Six of the cases are against Brian Donovan; seven are against Robert Grant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. A jury found Brian Donovan and Robert Grant guilty on each of seven indictments for larceny. Both defendants challenge their convictions on the ground that the trial judge erred in denying their motions for required findings of not guilty. Moreover, the defendant Grant argues that the trial judge erred in admitting allegedly "surprise" testimony which implicated him in the crimes. We conclude that these two contentions are meritless. Nonetheless, we further conclude that the criminal conduct at issue here constitutes a single larceny, not seven separate larcenies, and thus we order the dismissal of six of the seven indictments brought against each defendant.

The evidence adduced at trial is as follows. In the summer of 1981, the manager of Dickin's Tavern in Sturbridge overheard a group of people, including Grant and Donovan, having a conversation about an individual who had attached a "phony" night deposit box to a bank, and who had then stolen and cashed the checks which had been deposited therein. One of the defendants had said that the scheme sounded like "a helluva'n idea." A few months later, on October 1, 1981, Grant went to the foreman of the M. G. Sheet Metal Company in Southbridge with a sketch of an aluminum box which he wanted constructed. Grant told the foreman that the box was to be used as a paper shredder. The foreman testified at trial that the box made for Grant was "similar" to a bank night deposit box.[2]

The district service manager for Diebold, Inc., in Plainview, New York, also testified. He stated that, in early October, 1981, a man he later identified as Donovan purchased several parts, including the locking mechanism, for a Diebold night deposit box. Donovan allegedly told the Diebold employee that he wanted the parts to refurbish a night depository which he had salvaged from a junk yard.

---

[2] The phony box was never recovered. The witness testified using sketches and photographs.

Grant returned to the sheet metal factory about a week after his initial visit. He paid $264.60 in cash and picked up the box he had ordered, but then returned a few days later and requested that modifications be made to it. Grant later returned with Donovan, who looked at the box. Grant requested certain further changes, including the addition of a lock which Grant had brought with him. Grant alone picked up the final version of the box in late October. On November 2, 1981, Grant wrote a check for $151 to pay for the modifications. The check was returned for insufficient funds, and at some time in December Grant paid for the modifications in cash.

On Monday, November 30, 1981, the customer service manager at the Baybank Valley Bank in Springfield arrived at work and found fewer than the expected number of overnight deposit bags in the vault connected to the bank's night deposit box. Investigation revealed that deposits belonging to seven different bank customers, totalling an estimated $37,000, were missing. Some of the individuals who had made deposits on the evening of November 29 testified that the night deposit box seemed to protrude from the side of the building somewhat farther than normal, or that their keys did not work smoothly in the lock, or that, upon opening the box, they could see the bags of other depositors.

On the same morning on which the deposits were discovered missing, a black Cadillac automobile with a flat tire was found abandoned in the parking lot of a church, approximately one-half mile from the bank. The pastor of the church had not seen the automobile there on the previous evening. The police removed the Cadillac at the pastor's request, and later found inside it a motor vehicle citation made out to Donovan, and an expired license plate registered to the Village Steak House. On December 9, a man identifying himself as Robert Grant, the owner of the Village Steak House, called the police to arrange for the Cadillac to be released from the police tow yard. He never arrived to remove the automobile.

On December 10, the police executed a warrant for the search of Donovan's home, and found two photographs of a night deposit box. They also found $1,800 in cash in Donovan's

wallet. Both Donovan and Grant were arrested shortly thereafter. Grant had over $500 in cash on his person at the time of his arrest. Testimony was also presented at trial to the effect that Grant, while being held at the Hampden County house of correction in December of 1981, had asked an acquaintance to corroborate an alibi for him for the weekend of November 28-29. In April, 1982, while out of jail on bond, Grant told another individual that he had robbed a bank by using a phony night deposit box. Additional evidence was brought forth at trial about the relative financial condition of the defendants both before and after the deposits were discovered missing. There was testimony to the effect that Grant had paid back $1,900 in debts to acquaintances in early December, and had loaned another person $1,000. On December 4, Donovan had brought an automobile at an auction for $4,000 cash.

On March 11, 1983, a jury found both defendants guilty on each of the seven indictments for larceny. A single justice of this court granted the defendants' motion for a stay of execution of their sentences, and we granted the defendants' petition for direct appellate review of their convictions.

1. *The "Surprise" Witnesses*

The defendant Grant first argues that the trial judge erred in admitting the prejudicial testimony of two purportedly "surprise" witnesses. The Commonwealth submitted a list of prosecution witnesses to the defense prior to the trial. This list did not include the names of Jacqueline Hollis or her husband, John Hollis. Nonetheless, these two Connecticut residents came forward on the second day of trial after being informed by a friend about television coverage of the case. Voir dire testimony was taken. In essence, Mrs. Hollis stated that Grant had admitted to her that he had robbed a bank by using a phony night deposit box. John Hollis stated that Grant had requested him to corroborate an alibi for the weekend of November 28-29, 1981. The judge admitted this testimony over the objection of Grant's counsel, who claimed that the prosecution knew of the witnesses prior to trial, but did not disclose their existence in a timely fashion.

We conclude that admission of the Hollises' testimony was entirely appropriate. First of all, contrary to the contentions made by defense counsel, there is nothing in the record which suggests that the Commonwealth was aware of the Hollises until they came forward voluntarily. Thus there can be no inference that the prosecution acted in bad faith by failing to disclose their existence. See *Commonwealth* v. *Costello,* 392 Mass. 393, 400 (1984) (evidence properly admitted where "prosecution played an apparently blameless role" in the delayed disclosure). See also *Commonwealth* v. *Cundriff,* 382 Mass. 137, 149 (1980), cert. denied, 451 U.S. 973 (1981). However, even if there were some improper delay in disclosure, Grant is nonetheless not entitled to a new trial. We have recognized that "[t]he standards for the application of sanctions for delayed disclosure" of exculpatory and inculpatory evidence are similar. *Commonwealth* v. *Baldwin,* 385 Mass. 165, 175 & n.10 (1982). In such cases, we determine whether the defense, if provided with disclosure in a timely fashion, would have "been able to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Id.* at 175, quoting *Commonwealth* v. *Wilson,* 381 Mass. 90, 114 (1980). In other words, in cases involving the delayed disclosure of material evidence, the defendant is required to make some showing of prejudice. *Commonwealth* v. *Costello, supra* at 398. *Commonwealth* v. *Cundriff, supra* at 151.

In this case Grant has made no effort to demonstrate how additional time to investigate the Hollises might have been of help to his defense. Nor is there any indication that either defense counsel sought a continuance so that such investigation might be conducted. See *Commonwealth* v. *Cundriff, supra* at 150. Furthermore, defense counsel did manage to pursue a vigorous cross-examination of the Hollises, see *Commonwealth* v. *Costello, supra* at 398, which successfully elicited certain facts bearing on possible bias in their testimony. In light of these circumstances, and in light of the other evidence adduced at trial implicating Grant in the scheme, we cannot conclude

that any delayed disclosure of the existence of these witnesses was sufficiently prejudicial to warrant a new trial.

2. *Motions for Required Findings of Not Guilty*

At the close of trial, the defendants moved for a required finding of not guilty, Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), on the ground that there was insufficient evidence to demonstrate that either defendant had committed larceny.[3] We conclude that the judge's denial of both of these motions was correct.

In reviewing the denial of a motion for a required finding of not guilty, "we consider whether the evidence, in the light most favorable to the Commonwealth, 'is sufficient to permit the jury to infer the existence of the essential elements of the crime charged; and, whether the evidence and the inferences permitted to be drawn therefrom are sufficient to bring minds of ordinary intelligence and sagacity to the persuasion of guilt beyond a reasonable doubt.'" *Commonwealth* v. *Grant,* 391 Mass. 645, 648 (1984), quoting *Commonwealth* v. *Casale,* 381 Mass. 167, 168 (1980). "Convictions may rest entirely or mainly on circumstantial evidence," *Commonwealth* v. *Walter,* 10 Mass. App. Ct. 255, 257 (1980), citing *Commonwealth* v. *Asherowski,* 196 Mass. 342, 346 (1907), as long as "no essential element of the crime . . . rest[s] on surmise, conjecture, or guesswork." *Commonwealth* v. *Walter, supra,* quoting *Commonwealth* v. *Kelley,* 359 Mass. 77, 88 (1971).

Certainly with respect to the defendant Grant, the evidence is more than sufficient to warrant a jury finding on each element of the crime alleged. To support a conviction of larceny under G. L. c. 266, § 30,[4] the Commonwealth is required to prove

---

[3] The defendant Donovan also had moved for required findings of not guilty at the close of the Commonwealth's case.

[4] General Laws c. 266, § 30, as appearing in St. 1945, c. 282, § 2, provides, in pertinent part, that "[w]hoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . ."

the "unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently." *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). *Commonwealth* v. *Dellamano*, 393 Mass. 132, 134 n.3 (1984). The jury heard more than sufficient testimony to enable them to find that Grant had ordered the construction of a phony night deposit box which he planned to place on the wall of a bank, and that, by means of that phony box, Grant had intended to deprive permanently certain unlucky depositors of their cash receipts. The evidence is also sufficient to enable the jury to find that Grant, in fact, executed this plan, that on November 29, 1981, seven individuals had placed their deposits into Grant's phony box which Grant later removed, and that, while he was driving away from the scene, his automobile had a flat tire which forced Grant to abandon it at a nearby church, and that Grant at some time removed the money from the phony box with no intention of ever returning it to the owners.

The Commonwealth's case against Donovan was not so strong as that against Grant, but certainly strong enough to support Donovan's conviction on the theory of "joint venture." Under that theory, the prosecution is required to demonstrate that Donovan "intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). See *Commonwealth* v. *Burrell*, 389 Mass. 804, 807 (1983); *Commonwealth* v. *Funches*, 379 Mass. 283, 295 (1979). We have held that "[t]he jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Burrell, supra* at 807, quoting *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). In this case the jury heard evidence from which it would have been warranted in finding that Donovan assisted in the design and construction of the phony night deposit box, and that he did so with the intent to induce customers to deposit their money into that box, rather than into the Baybank Valley Bank in Springfield.

As noted, the jury would have been further warranted in finding that the scheme was successful (if only temporarily), and that Donovan shared in the funds taken from the phony box. In short, there was no error in the denial of both defendants' motions for required findings of not guilty.

3. *Duplicity of the Indictments*

The defendants were each indicted and convicted of seven separate larcenies, one for each individual who deposited funds into the phony night deposit box. Grant was sentenced to five consecutive three to five year sentences, and two three to five year sentences to be served concurrently with the first of the consecutive sentences. Donovan was sentenced to two consecutive three to five year sentences, and five three to five year sentences which were to be served concurrently with the first of the consecutive sentences. The defendants contend that the larcenous scheme for which they were convicted constitutes a single crime, not seven distinct crimes, and thus that six of the seven indictments should be dismissed as duplicitous. We agree.

The Commonwealth correctly recognizes that these contentions are being raised for the first time on appeal. It may be the case that a challenge to the duplicity of convictions or sentences could be raised at any stage of the proceedings. See *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 735 (1973). Nonetheless, we assume without deciding that the issue should have been raised below. "In the absence of a proper preservation of an issue for appellate review, the applicable standard is whether there existed a 'substantial risk of a miscarriage of justice.'" *Commonwealth* v. *Moffett*, 383 Mass. 201, 211 (1981), quoting *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We conclude that the imposition of five consecutive sentences on Grant (amounting to a sentence of fifteen to twenty-five years), and two consecutive sentences on Donovan (amounting to a sentence of six to ten years), where the maximum permissible sentence for the crime is five years in the State prison,[5] constitutes a sufficient injustice to warrant

---

[5] General Laws c. 266, § 30, provides that "if the value of the property stolen exceeds one hundred dollars," one guilty of larceny shall "be punished by imprisonment in the state prison for not more than five years."

review, despite the defendants' failure to raise the issue at trial. See *United States* v. *Reed*, 639 F.2d 896, 904 (2d Cir. 1981) ("The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense"). Cf. *Commonwealth* v. *Berryman*, 359 Mass. 127, 131 (1971) (any error in proceeding against defendant on multiple indictments rendered harmless by reason of concurrent sentences).

The Commonwealth argues that this appeal is controlled by the rule set forth in *Commonwealth* v. *Jones*, 382 Mass. 387 (1981). In that case, we held that "[i]n determining whether, on the basis of a single act, a defendant may be prosecuted and punished for two statutory or common law crimes, the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not." *Id.* at 393. See also *Illinois* v. *Vitale*, 447 U.S. 410, 416 (1980). The Commonwealth contends that, because each separate conviction depends on proof of loss from a different depositor, the defendants were appropriately convicted of multiple crimes. We disagree. *Commonwealth* v. *Jones, supra*, involved prosecutions for *different* crimes, under *different* statutes, arising out of the same criminal episode. See *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306 (1972); *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). In such cases we are required to determine whether either crime charged "is a lesser-included offense of the other." *Commonwealth* v. *Jones, supra* at 393. See also *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981); *Salemme* v. *Commonwealth*, 370 Mass. 421, 423 (1976). But the "same evidence" rule set forth in *Jones* "has no application . . . [where] a single statute is involved and the issue is whether two [or more] discrete offenses were proved under that statute rather than a single continuing offense." *Commonwealth* v. *Gurney,* 13 Mass. App. Ct. 391, 401 (1982), quoting *Commonwealth* v. *Winter*, 9 Mass. App. Ct. 512, 527 n.16 (1980).

The issue before us turns on whether the Legislature intended to authorize more than a single conviction for the larcenous scheme at issue here. See *Commonwealth* v. *Levia*, 385 Mass. 345, 347 (1982); *Commonwealth* v. *Beacon Distribs., Inc.*,

14 Mass. App. Ct. 570, 573 (1982); *Commonwealth* v. *Gurney*, *supra*. The statute is silent with respect to situations such as this.[6] We have held, however, that criminal statutes must be construed strictly against the Commonwealth. *Commonwealth* v. *Devlin*, 366 Mass. 132, 137-138 (1974). "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Commonwealth* v. *Crosscup*, 369 Mass. 228, 234 (1975), quoting *Rewis* v. *United States*, 401 U.S. 808, 812 (1971). See *Bell* v. *United States*, 349 U.S. 81, 83 (1955). In light of these principles, and in light of authority in this jurisdiction, and in other jurisdictions construing similar statutes, we infer that, in cases such as this, the Legislature intended that only a single crime be charged.

In *Commonwealth* v. *Stasiun*, 349 Mass. 38, 45 (1965), this court recognized that "where it appears that successive takings are actuated by a single, continuing criminal impulse or intent or are pursuant to the execution of a general larcenous scheme, such successive takings constitute a single larceny, regardless of the extent of the time which may have elapsed between each taking." See also *Commonwealth* v. *England*, 350 Mass. 83, 86 (1966). We conclude that the case before us is controlled by this principle. The evidence shows that Donovan and Grant hatched a single plan to place a single phony night deposit box on the wall of a single bank. The box was only placed on the wall for a single time, on a single evening. Thus the defendants executed a single larcenous scheme pursuant to a "single, continuing criminal impulse or intent." *Commonwealth* v. *Stasiun*, *supra*. Consequently, their conduct constitutes only a single crime.

The Commonwealth contends that the principle set forth in *Commonwealth* v. *Stasiun*, *supra*, is inapplicable where, as

---

[6] General Laws c. 266, § 30, defines the object of a larceny as "the property of another." However, we do not interpret the phrase "of another" as an element of the offense of larceny, such that theft of property from several "others" would always constitute several larcenies. Instead, we agree with the Supreme Court of Delaware which held, in a similar case, that the phrase "of another" "simply describes the subject of theft as property . . . which [the] defendant has no right to possess." *Reader* v. *State*, 349 A.2d 745, 747 (Del. 1975).

here, property has been taken from seven different depositors. Consistent with the overwhelming weight of authority in other jurisdictions, we disagree, and conclude that, in the circumstances here, only a single crime has been committed even though the larcenous scheme involves the taking of property from a number of owners. In *State* v. *Myers*, 407 A.2d 307, 309 (Me. 1979), the defendant stole money from a single cash box which contained funds belonging to several different towns. He was indicted for four counts of larceny, a separate count for each of the towns which had deposited cash in the box. The Supreme Judicial Court of Maine held that the indictment was flawed by multiplicity. "The stealing of property from different owners at the same time and at the same place constitutes but one larceny." *Id.* at 309, quoting 2 R.A. Anderson, Wharton's Criminal Law and Procedure § 451 (1957). See, e.g., *People* v. *Bauer*, 1 Cal. 3d 368, 378 (1969), cert. denied, 400 U.S. 927 (1970); *Sweek* v. *People*, 85 Colo. 479 (1929); *Reader* v. *State*, 349 A.2d 745, 747 (Del. 1975); *Hearn* v. *State*, 55 So. 2d 559 (Fla. 1951); *People* v. *Vaini*, 33 Ill. App. 3d 246, 247-249 (1975); *People* v. *Cox,* 286 N.Y. 137, 142-143 (1941); *State* v. *Jager*, 85 N.W.2d 240, 243 (N.D. 1957); *State* v. *Waller*, 280 S.C. 300, 301 (1984); *State* v. *Hall*, 298 S.E.2d 246, 256 (W. Va. 1982).

Our result is also consistent with analogous cases interpreting 18 U.S.C. § 1708 (1982), the Federal statute proscribing theft from the United States mail. In *United States* v. *Anderson*, 709 F.2d 1305, 1306 (9th Cir. 1983), cert. denied, 465 U.S. 1104 (1984), the defendant was indicted for six counts of mail theft. The court held that the trial judge had erred in failing to consolidate the counts, on the ground that " '[t]o take several letters from a mail depository simultaneously and continuously is one act that comprehends one intent,' even though the letters are separate and each has a separate addressee." *Id.* at 1306, quoting *Johnson* v. *Langomarsino*, 88 F.2d 86, 88 (9th Cir. 1937). See also *United States* v. *Edmonson*, 659 F.2d 549, 550 (5th Cir. 1981) (possession of several "pieces of mail stolen at the same time could properly have been the subject of only one count"); *United States* v. *Arce*, 633 F. 2d 689, 696

(5th Cir. 1980) (same), cert. denied sub nom. *Coronado* v. *United States*, 451 U.S. 972 (1981).

We emphasize that nothing in this opinion signals a retreat from our holding in *Commonwealth* v. *Levia*, 385 Mass. 345, 351 (1982), where we affirmed the two armed robbery convictions of a defendant who had robbed two individuals in the course of a single criminal episode. Whenever a single criminal transaction gives rise to crimes of violence which are committed against several victims, then multiple indictments (and punishments) are appropriate. *Id.* See *People* v. *Bauer, supra* at 378. As the Supreme Court of Michigan recently held, though the "appropriate 'unit of prosecution' for larceny is the taking at a single time and place without regard to the number of items taken; the appropriate 'unit of prosecution' for armed robbery is the person assaulted and robbed." *People* v. *Wakeford*, 418 Mich. 95, 112 (1983).

We affirm the conviction of each defendant on a single indictment for larceny, and remand to the Superior Court (1) for dismissal of the other six indictments against each defendant; (2) for a determination of whether the sentence imposed on each defendant on the remaining conviction for larceny is still appropriate; and, if not, (3) for vacation of the sentence imposed, and resentencing.

*So ordered.*