COMMONWEALTH *vs.* ROBERT M. LANE. No. 87-970. May 4, 1988. *Larceny. False Pretenses. Common and Notorious Thief. Practice, Criminal,* Duplicitous convictions.

The defendant, Robert M. Lane, was convicted of possession of a false identification card (G. L. c. 90, § 24B) and eleven counts of larceny by false pretenses of property greater in value than $100 (G. L. c. 266, § 30). Having been found to have committed "three distinct larcenies," Lane was sentenced as "a common and notorious thief" under G. L. c. 266, § 40, to three concurrent terms of not more than twelve nor less than eight years at M.C.I., Cedar Junction.[1]

According to the evidence presented in a jury-waived trial in the Superior Court, Lane had various forms of identification issued to him in the names of Merton P. Perlstick and Daniel J. Murphy. Using the false identifications, Lane opened accounts in three banks in the false names. Using the name of Daniel J. Murphy, in May of 1985 Lane leased a one-family house in

---

[1] Lane was also sentenced on the false identification convictions to two concurrent terms of not more than five nor less than four years. Lane does not appeal from those convictions. The remaining larceny convictions were placed on file with the defendant's consent.

Newton from its owner. He never moved in. Beginning around May 28, 1985, Lane advertised the house in the Boston Phoenix and the Boston Globe newspapers as available for rent. The advertisements referred inquiries to different telephone numbers, all answering services. Over a three-week period ending on June 21, 1985, when he was arrested, Lane, posing in some instances as Murphy and in some as Perlstick, showed the Newton house to eleven different groups of potential tenants who responded to the various advertisements. He met with the prospective tenants at different places, various restaurants and a motor inn and took applications and deposits from them in varying amounts in the form of cash, which he pocketed, or checks, which he either cashed or deposited in one of the three bank accounts he had set up. Lane contends on appeal that (1), based upon what transpired, he could be convicted of no more than one larceny or (2), even if guilty of more than one larceny, he was improperly sentenced as "a common and notorious thief." We affirm.

1. Lane claims that, because he attempted, pursuant to a single plan, to rent the same house to a variety of groups successively, he can only be charged with one crime of larceny by false pretenses. The defendant is mistaken. "[S]uccessive takings of property actuated by a single, continuing criminal impulse or intent or pursuant to a general larcenous scheme may, but need not, be charged as one crime." *Commonwealth* v. *Murray*, 401 Mass. 771, 774 (1988). Lane's larcenous scheme was unlike the one in *Commonwealth* v. *Donovan*, 395 Mass. 20, 29 (1985), upon which Lane relies. In *Donovan*, although there were several different victims, the defendant committed only one act, superimposing a phony bank night deposit box over a real one. Lane, however, apart from causing losses to different groups of victims, committed a multitude of separate acts on different dates, using different false representations and different methods. His conviction of eleven separate larcenies in the circumstances was proper.

2. Lane contends that he should not have been adjudged a "common and notorious thief" under G. L. c. 266, § 40, because the three larcenies for which he was sentenced were not "distinct" but were, instead, parts of one common scheme or plan. The three larcenies were certainly related in that they originated with Lane's idea of renting a house in a false name, offering the house for rent to as many people as he could over the course of the next month (before anyone would be expected to move in) and collecting rent deposits with which he would abscond. The three larcenies on which Lane was sentenced, however, were distinct in that they involved separate victims and different amounts of money taken on different days and at different places. In addition, the method of payment required of the victims differed: in one case a deposit was taken in cash; in another, a check made out to Perlstick was taken and deposited in a bank; in a third case, two checks were taken and deposited in separate accounts (and a lease was provided).

Although the word "distinct" in G. L. c. 266, § 40, may imply something more in the way of differences between offenses than what is required to justify separate convictions of larceny, see *Commonwealth* v. *Crocker*, 384 Mass. 353, 356 n.5 (1981), the three incidents on which Lane was sentenced in the present case were sufficiently different from one another to bring them within the statute for sentencing purposes. See *Commonwealth* v. *McKnight*, 289 Mass. 530, 547 (1935); *Collins* v. *Commonwealth*, 315 Mass. 167, 170 (1943); *Commonwealth* v. *Greenberg*, 339 Mass. 557, 566-572, 586 (1959); *Commonwealth* v. *Crocker*, 384 Mass. at 354-356.

*Judgments affirmed.*

*Richard Zorza,* Committee for Public Counsel Services, for the defendant.

*Edward D. Rapacki,* Assistant District Attorney, for the Commonwealth.