### COMMONWEALTH *vs.* NORMAN BALDWIN.

No. 98-P-2244.

Middlesex. February 23, 2000. - August 29, 2001.

Present: BROWN, PORADA, & BECK, JJ.

*Robbery. Larceny. Practice, Criminal,* Lesser included offense, Sentence, Comment by judge.

At a trial of multiple indictments, the evidence was such that the defendant's convictions for larceny of property over $250 and armed robbery were separate offenses, where they involved different property taken at different times and locations in different circumstances, and neither robbery was continuous with the subsequent larceny. [406-407]

This court remanded indictments for larceny of property over $250 for resentencing in accordance with the value of the money taken in the larcenies, where the prosecutor's closing argument addressing these charges impermissibly tallied the value of property taken in the larceny with the value of property taken in the armed robbery, which were separate offenses, in order to reach the dollar value required to sentence the defendant for larceny over $250. [407-408]

This court concluded that a judge's ambiguous statement during the sentencing hearing, in the circumstances, did not demonstrate that the judge improperly considered the defendant's credibility in his sentencing decision and did not warrant resentencing. [408-410]

INDICTMENTS found and returned in the Superior Court Department on May 3, 1995.

The cases were tried before *Charles T. Spurlock*, J.

*Richard J. Fallon* for the defendant.

*Edward R. Bedrosian, Jr.*, Assistant District Attorney, for the Commonwealth.

BECK, J. In essence, on two separate occasions involving two different victims, the defendant, acting with an accomplice, robbed a man of his wallet, money, and automatic teller machine (ATM) card at knife point in a deserted location, extracted the victim's personal identification number (PIN) by threats, and

used the ATM card to withdraw money from the victim's bank account. On appeal from his convictions on multiple indictments, the defendant claims that his convictions of larceny of property over $250 should be dismissed because larceny is a lesser included offense of robbery. He also claims that the judge's comment at the sentencing hearing that the defendant was "a lot less than honest person [*sic*]" requires that his case be remanded for resentencing before a different judge. For the reasons set out below, we affirm the convictions but remand for resentencing on the larceny indictments.

1. *The facts.* Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found the following facts. Sometime after 10:00 P.M. on November 24, 1994, Ernest Griffiths offered a ride to a man walking along route 3 southbound in the Chelmsford area. The hitchhiker, later identified as the defendant, said he needed a ride a short distance to a cinema where a friend was going to meet him.

As Griffiths approached the cinema, the defendant put a knife to Griffiths's throat and directed him to a darkened industrial area beyond the cinema. A white van pulled up beside Griffiths's car and a man got out of the van. The defendant ordered Griffiths to get out of his car and demanded Griffiths's wallet, which contained $25, two Baybank cards, two credit cards, and assorted charge cards. The other man, later identified as Jose Pena, took Griffiths's watch and car keys while holding a sharp object to Griffiths's abdomen. Threatening Griffiths with death, the defendant demanded that Griffiths reveal the PIN to his ATM card. In the circumstances, Griffiths complied. The defendant and Pena then drove off.

Four months later, at about 11:00 P.M. on March 24, 1995, Michael Thompson stopped in a rest area off route 3 in the Chelmsford area. After a short conversation with a man, later identified as the defendant, Thompson and the defendant agreed to meet at a nearby American Legion hall. Thompson drove in his car and the defendant drove a white van. Upon arriving at the agreed upon location, Thompson walked toward the defendant's van. The defendant suddenly grabbed Thompson and pushed him into the van. Jose Pena was hiding in the van

under a blanket. Pena threatened Thompson and put a knife to Thompson's neck while the defendant took Thompson's car keys and went to search Thompson's car. After taking Thompson's wallet with $18 in cash and an ATM card, the defendant drove off with Thompson still in the back of the van.

After driving around for about one-half hour, the defendant demanded Thompson's PIN. Thompson gave a number. When the defendant stopped to use the card, he told Thompson he would kill him if the PIN was not the correct number. Thompson then gave a different number. The defendant used the card to withdraw money from Thompson's account. After getting the money, the defendant and Pena discussed what to do with Thompson, including whether they should kill him. Ultimately they tied a ripped black tee shirt around his eyes, took his shoes off, bound his hands behind his back with wire, and pushed him and the shoes out of the van.

More than a year after the attacks, the defendant was indicted on two sets of indictments charging kidnaping, armed robbery, larceny over $250, attempted extortion, and assault and battery with a dangerous weapon. Upon verdicts of guilty, he was sentenced to concurrent terms in State prison on all counts. The longest, on the armed robberies, were not less than nine nor more than twelve years. The defendant's appeal of his sentence to the Appellate Division of the Superior Court was dismissed. The trial judge denied his motion to revise and revoke his sentence without a hearing. (There is nothing in the record before us as to the basis on which the defendant sought sentencing relief.)

2. *The larceny convictions.* The defendant claims the larceny convictions are invalid and should be dismissed because they were lesser included offenses of the armed robbery convictions. Anticipating an argument from the Commonwealth that "the taking of money from the ATM machines was a different incident from the actual armed taking of the ATM cards," the defendant argues that the armed robbery and larceny counts constitute a single scheme precluding prosecution on separate indictments, citing *Commonwealth* v. *Donovan*, 395 Mass. 20 (1985). We disagree. *Donovan*, however, does not apply to the facts of this case.

In *Donovan,* the defendants mounted an imitation deposit lock box over the real one at a particular bank. When they collected the phony box and its contents the next morning, it contained seven deposits. The Commonwealth charged and convicted the defendants on seven counts of larceny. The Supreme Judicial Court reversed on the ground that the defendants could only be prosecuted for a single continuing offense because there was "a single plan to place a single phony night deposit box on the wall of a single bank. The box was only placed on the wall for a single time, on a single evening." *Id.* at 29.

We have long since distinguished *Donovan,* which applies to cases involving a single act, from cases where there is a continuing scheme with one purpose but more than one discrete offense. See *Commonwealth* v. *Lane,* 25 Mass. App. Ct. 1002, 1003 (1988) (no error in defendant's convictions for possession of false identification card and eleven counts of larceny by false pretenses for separate acts on different dates using different false representations and different methods). See also *Commonwealth* v. *Murray,* 401 Mass. 771, 774 (1988) (no error in prosecuting defendant on 180 counts charging each false entry in corporate employer's books as separate offense).

In this case, the armed robberies and the larcenies were separate offenses. Not only was different property taken at different times and different locations in different circumstances, neither robbery was continuous with the subsequent larceny. The extortion of the PIN necessarily intervened. See *Commonwealth* v. *Rivera,* 397 Mass. 244, 253 (1986) (kidnaping conviction "not necessarily based on the same act or incident that constituted either . . . rape or . . . robbery"); *Commonwealth* v. *Kemp,* 46 Mass. App. Ct. 902, 902-903 (1998) (armed robbery of money, car jacking, and larceny of motor vehicle constituted three separate and distinct acts).

3. *The larceny sentence.* As recited, the items taken during the armed robberies were the victims' wallets and their contents, and in the case of Griffiths, a watch worth $50. In the section of his closing argument addressing the larceny charge involving Griffiths, the prosecutor tallied the value of the property the defendant took from Griffiths as $200 from his bank account, a

watch worth $50, and $25 cash from Griffiths's wallet "for a total of about two hundred and seventy-five dollars." The judge subsequently instructed the jury that "if [they] determine[d] that the Commonwealth . . . proved . . . that the defendant is guilty of larceny, [they should] go on to determine whether all of the property that was stolen was worth more than two hundred-fifty dollars."

Although the defendant does not raise the issue, we are constrained to point out, see *Commonwealth* v. *Rivera*, 397 Mass. at 252 ("we will take notice on our own motion of duplication of sentences," quoting from *Commonwealth* v. *Stewart*, 375 Mass. 380, 393 [1978]), that in order to reach the dollar value required to sentence the defendant for larceny over $250, the Commonwealth added the value of the property taken in the armed robbery to that taken from the bank accounts. This was impermissible because, as we have discussed, the offenses were separate. Therefore, the larceny indictments must be remanded for resentencing in accordance with the value of the money taken in the larcenies, which was in each case less than $250. See *Commonwealth* v. *Kelly*, 24 Mass. App. Ct. 181, 183 (1987) (value of property element of punishment but not of offense of larceny). (In a statement given to police, the defendant admitted that he took $400 from Griffiths's account. However, as the prosecutor's closing argument asserted, the bank records introduced in evidence showed that the defendant withdrew $200 from Griffiths's account. The defendant's statement that he took $200 from Thompson's account is the only evidence on that point.)

4. *Sentencing hearing.* At the beginning of the sentencing hearing, the prosecutor said, "I have victim impact statements from the victims. I just want to give them the opportunity — they may say to me that's all." In response to that request, the judge remarked:

> "I think I saw pretty clearly . . . what they went through . . . from when they testified on the witness stand . . . And what this defendant put them through . . . not only that night, but by force — well, not forcing this, but taking the position that he did both in the motion to suppress and then turning it around and taking a different position

at trial, which indicates to me that he's a lot less than honest person."

The defendant now claims, apparently for the first time on appeal, that this remark shows the judge improperly considered his assessment of the defendant's credibility in his sentencing decision. Cf. *Commonwealth* v. *Coleman*, 390 Mass. 797, 803 n.5 (1984).

As a general matter, it is not within our power to review otherwise lawful sentences. See *id.* at 804; G. L. c. 278, §§ 28A-28C. However, the rule that "a judge cannot consider the alleged perjury of a defendant in imposing a sentence" is well established in this Commonwealth. *Commonwealth* v. *Gresek*, 390 Mass. 823, 830 (1984). Such sentences "effectively punish[] [a] defendant for an offense, without the procedural safeguards of an indictment and trial," *Commonwealth* v. *Coleman*, 390 Mass. at 810, and may chill a defendant's decision to testify. *Id.* at 808. Consideration of a defendant's alleged perjury at trial in sentencing creates a substantial risk of a miscarriage of justice. *Id.* at 810. Compare *United States* v. *Grayson*, 438 U.S. 41, 55 (1978) (consideration of perjury in sentencing decisions as indicative of defendant's character and chances for rehabilitation permissible in Federal courts).

As even the defendant acknowledges, "[i]t is not exactly clear what the judge meant by his statement that [the defendant] took a different position at the suppression hearing than he did at trial." In context, however, it appears that what the judge was referring to was the content of the written statement that was the subject of the motion to suppress. In that statement, the defendant acknowledged going to rest areas on route 3 with the intent of carrying out a plan to rob men who might approach seeking homosexual encounters. At trial, however, he testified that he stopped at the rest area the first time because he was "too high to continue driving." According to this account, Griffiths just happened to make a proposition the defendant found disgusting, the defendant felt violated by the victim's proposition, and it was only then that he "concocted" the "vague plan" that he and Pena then "play[ed] by ear." Thus, the judge apparently was commenting on the effect on the victims of the defendant's trial testimony blaming the victims and his addic-

tion to cocaine for his conduct. The prosecutor had argued as much in his closing. Cf. *Commonwealth* v. *Drane*, 47 Mass. App. Ct. 913, 914 (1999) (no error in enhanced sentence reflecting "lasting psychological damage to the victims, as shown by the victim impact statements").

The remark here is considerably less blatant than the statements in cases holding that remand was necessary. Compare *Commonwealth* v. *Coleman*, 390 Mass. at 809-810 (judge cross-examined defendant, repeatedly expressed disbelief in defendant's testimony, and stated he was offended by the defendant's attempt to "kid" him); *Commonwealth* v. *Gresek*, 390 Mass. at 830-831 (judge accused defendant of "lying like hell . . . no doubt [in judge's] mind . . . [defendant] lying"); *Commonwealth* v. *Murray*, 4 Mass. App. Ct. 493, 495 n.3 (1976) (judge "punishing [defendant] for coming up here and lying and for his whole attitude"); *Commonwealth* v. *Juzba*, 46 Mass. App. Ct. 319, 325 (1999) (judge explained he was "imposing . . . sentence [because he] found [defendant's] testimony to be absolutely preposterous. . . . [Defendant] has absolutely no concern for the truth"). Given the ambiguity of the statement, which was neither emphasized nor repeated, the likely meaning in context (there can be no dispute that the defendant gave two conflicting accounts), the defendant's prior unsuccessful attempts at sentencing relief, and the fact that the sentence was less than the prosecutor recommended (nine to twelve rather than ten to fifteen), but see *Commonwealth* v. *Coleman*, 390 Mass. at 810 (accepting Commonwealth's recommendation "does not vitiate . . . improper consideration of the defendant's perjury"), we conclude that resentencing before another judge is not warranted.

The judgments pertaining to larceny over $250 are vacated and are remanded for resentencing on those indictments. The remaining judgments are affirmed.

*So ordered.*