# Commonwealth vs. James B. Faust, Jr.

No. 11-P-592.

Suffolk. January 10, 2012. - March 27, 2012.

Present: Berry, Kafker, & Mills, JJ.

*Possession of Burglarious Instruments. Receiving Stolen Goods. Practice, Criminal,* Directed verdict, Duplicative convictions, Argument by prosecutor, Hearsay, Confrontation of witnesses. *Evidence,* Hearsay, Impeachment of credibility, Prior inconsistent statement. *Witness,* Impeachment.

At the trial of a criminal complaint charging, inter alia, possession of burglarious instruments, the evidence was sufficient to sustain the defendant's conviction, where, in light of testimony that two automobiles were broken into and numerous items stolen from them were found in the car driven by the defendant, the jury reasonably could have inferred that the defendant intended to use three screwdrivers, a knife, and two flashlights to break into a vehicle; further, the evidence was sufficient to conclude that the defendant was engaging in both receiving stolen property and possessing burglarious instruments. [500-501]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the prosecutor's closing argument, where references to the defendant's post-Miranda warning statements, and to the defendant as a liar and a thief, were not, in the circumstances of the case, improper. [501-502]

At the trial of a criminal complaint charging, inter alia, receiving stolen property, four of the defendant's convictions were not duplicative, where there was sufficient evidence for the jury to infer that the four different items were stolen from different people at different times and places. [502-503]

At a criminal trial, a police officer's testimony regarding a radio dispatch was not unduly prejudicial [503-504]; further, the judge did not abuse her discretion in the admission of testimony by a witness that his automobile had been stolen [504]; moreover, the judge acted within her discretion in setting the boundaries for impeachment of a police officer with his testimony from a pretrial suppression hearing [504]; finally, no substantial risk of a miscarriage of justice arose from the erroneous admission of a page from a police journal [504-505].

Complaint received and sworn to in the Dorchester Division of the Boston Municipal Court Department on March 1, 2010.

The case was tried before *Rosalind Henson Miller,* J.

*Christopher L. MacLachlan* for the defendant.

*Vincent J. DeMore, III,* Assistant District Attorney (*Brendan S. Cox,* Assistant District Attorney, with him) for the Commonwealth.

KAFKER, J. Apprehended with three screwdrivers, two flashlights, a folding knife, and stolen property including four global positioning system (GPS) units with car chargers attached, an iPod, a laptop computer, and welding equipment, the defendant, James B. Faust, Jr., was convicted at a jury trial of three counts of receiving stolen property with a value greater than $250, four counts of receiving stolen property with a value less than $250, one count of possession of burglarious instruments, and one count of furnishing a false name. The defendant attacks the sufficiency of the evidence on the conviction of possession of burglarious instruments; he attacks the prosecutor's closing argument, in which she referred to him repeatedly as a "thief" and a "liar"; he argues that convictions of receiving stolen property are duplicative or, in the alternative, the evidence was insufficient; and, finally, he attacks the admission of certain evidence. We affirm.

1. *Facts.* Based on the evidence at trial, the jury could have found the following facts. On the morning of February 26, 2010, Officer James Harte of the Boston police department responded to 2262 Dorchester Avenue based on a report of a stolen car. Not finding the vehicle there, he broadcast a description of it over the radio. A police detective happened to be behind that car in traffic, and the vehicle was stopped by police about two miles away. The defendant, who had been driving the car, was placed in custody.

In an inventory search of the car at the station, the police found two flashlights, three screwdrivers, and a folding knife in the car door pockets. On the back seat was a black backpack that contained a laptop computer and printouts from online legal research service Westlaw. The rear cargo area contained a brown briefcase that held documents addressed to the defendant; a duffel bag containing welding equipment; and an orange and black backpack that contained a silver cigarette case and four GPS units with car chargers attached. Two of the GPS units also had car mounts attached.

At the police station, Officer Joseph Abasciano booked the

defendant and read him his Miranda rights. The defendant stated that his name was Mark Herdon but gave several different spellings of the name. He also asked whether he would be able to get his laptop back from the back seat of the car. Officer Abasciano searched the defendant and found a cellular telephone, which belonged to him, and an iPod Touch.[1] The defendant stated that the iPod was his girlfriend's iPhone,[2] which he used to listen to music because it did not function as a telephone. Officer Harte told the defendant that he knew the iPod did not belong to him; the defendant said nothing in response.

Three owners of the property found with the defendant were identified by police. Marc Emond, after being notified that the police had his laptop, found that his car window had been broken and pried open. Timothy Lewis similarly discovered, after being contacted by police, that someone had smashed the window of his car, moved it, and taken his welding equipment. Alexander Amacon owned the iPod and one of the GPS units. Each identified his property among the items in the car driven by Faust, and claimed it from the police. Emond and Lewis testified at trial; Amacon did not. No owner was identified for the other items in the car.

*2. Possession of burglarious instruments.* The defendant argues that he was entitled to a required finding of not guilty of possession of burglarious instruments because there was no evidence that he intended to use the screwdrivers, knife, and flashlights to break into a particular depository. He also argues that if there was such evidence of his intent, in regard to the break-in of Emond's automobile, he could not be convicted both of using the tools to break into the car and stealing the computer, and of receiving the same computer.

As the Supreme Judicial Court explained in an early case interpreting a statute[3] that eventually became the current version of G. L. c. 266, § 49: "The offence was complete when the tools were procured with a design to use them for a burglarious purpose. A general intent was sufficient. It was not necessary to

---

[1] An iPod Touch is a multifunction music player and Internet device.

[2] An iPhone is a multifunction music player, cellular telephone, and Internet device.

[3] St. 1853, c. 194.

allege or prove an intent to use them in a particular place . . . ." *Commonwealth* v. *Tivnon*, 8 Gray 375, 380 (1857). See Criminal Model Jury Instructions for Use in the District Court § 8.180 n.3 (Mass. Cont. Legal Educ. 2009) ("It is not necessary to prove . . . that defendant intended to break into any particular depository"). Thus, the Commonwealth bears the burden of showing the defendant's intent to use the instruments to break into a building, room, vault, safe or place for keeping valuables, but need not identify the particular depository in which he did or would have used them.

The jury here heard evidence that the vehicles of Lewis and Emond were broken into and that numerous stolen items (including Lewis's and Emond's property) were found in the car the defendant was driving. More specifically, a backpack was found in the trunk that contained four GPS units (two still in car mounts) with car charging adapters attached. Against this background, the jury reasonably could have inferred that Faust intended to use the tools to break into a car, which is a depository. See *Commonwealth* v. *Aleo*, 18 Mass. App. Ct. 916, 917 (1984). The Commonwealth is not required to identify a specific automobile.

Although it is true that "convictions for both stealing and receiving the same items on the same occasion cannot be maintained against one individual," that is not the question in this case. *Commonwealth* v. *Corcoran*, 69 Mass. App. Ct. 123, 125 (2007), citing *Commonwealth* v. *Haskins*, 128 Mass. 60, 61 (1880). Rather, here, the defendant was convicted of receiving stolen property and of possessing burglarious instruments. There was sufficient evidence to conclude that the defendant was engaging in both types of criminal activities here. Finally, the Commonwealth is not required to exclude the defendant as the thief to obtain a conviction of receipt of stolen property. *Commonwealth* v. *Corcoran*, *supra* at 128-129.

3. *Prosecutor's closing argument.* Faust contends that the closing argument for the Commonwealth created a substantial risk of a miscarriage of justice due to the prosecutor's repeated references to him as a "thief" and a "liar" and due to the prosecutor's purported references to his denial of the accusations after receiving Miranda warnings. The latter contention is without merit because the defendant's statements were not simply denials of guilt but false explanations of the circumstances sur-

rounding his possession of the computer and the iPod. See *Commonwealth* v. *McNulty*, 458 Mass. 305, 329 n.23 (2010) (defendant's statements that did not unequivocally deny guilt but "set out a version of events that attempted to minimize his responsibility" are admissible).

Although referring to the defendant as a liar is often problematic, in this case the defendant made demonstrably false statements to the police, and so it was permissible for the prosecutor to marshal the evidence in argument. See *Commonwealth* v. *Coren*, 437 Mass. 723, 733 n.9 (2002) (repeated references to nontestifying defendant as "liar" in closing permissible "where the evidence clearly supports the inference that the defendant lied").

The defendant objects to the prosecutor's characterizations of the defendant as a "thief" where he was not charged with stealing any of the items at issue but rather that he was the receiver of the stolen goods and a possessor of burglarious instruments. As explained above, the Commonwealth need not prove that the defendant was not the thief as part of its case for receiving stolen property. See *Commonwealth* v. *Corcoran*, *supra* at 125, 128-129. As there is no obvious shorthand term for one who receives stolen property or possesses burglarious instruments, we conclude that in context the references to the defendant as being a "thief" fall into the category of "[e]nthusiastic rhetoric, strong advocacy, and excusable hyperbole" in arguing reasonable inferences from the evidence. *Commonwealth* v. *Wilson*, 427 Mass. 336, 350 (1998), quoting from *Commonwealth* v. *Sanna*, 424 Mass. 92, 107 (1997). Moreover, the lack of objection by the defendant, although not dispositive, suggests that these references were not unfairly prejudicial in light of the closing argument as a whole. See *Commonwealth* v. *Taylor*, 455 Mass. 372, 384 (2009), and cases cited. Under these circumstances, the prosecutor's closing argument did not give rise to a substantial risk of a miscarriage of justice.

4. *Convictions of receiving stolen property.*[4] The defendant attacks four of his convictions of receiving stolen property, one

---

[4]As a threshold matter, these arguments pertain to charges that were placed on file, which are normally not subject to appellate review. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). However, since the record does not

each for the three GPS units and a silver cigarette case found in a backpack in the car he was driving. He argues that, because there was no evidence that he received each item at a different time, only one of these charges can stand, and the rest are duplicative. He analogizes to *Commonwealth* v. *Donovan*, 395 Mass. 20, 29-30 (1985), in which the defendants had placed a phony night deposit box on the side of a bank "for a single time, on a single evening," and the Supreme Judicial Court held that they were guilty of a single larceny even though the property of multiple victims was taken. We conclude that there was no error because, unlike *Donovan*, there was sufficient evidence for the jury to infer that the items, particularly the three different GPS units, were stolen from different people at different times and places. In contrast to *Donovan*, we are not presented with evidence of only a single unified taking. Instead, the evidence supported separate counts and separate convictions of receiving stolen property. See *Harding* v. *Commonwealth*, 283 Mass. 369, 372-373 (1933).

5. *Various evidentiary issues.* Officer Harte testified, over objection, that he was responding to a report of a stolen vehicle that resulted in his broadcast of a description of the car shortly before the defendant was arrested. No contemporaneous limiting instruction was requested or given. This evidence was admitted as background for the "state of police knowledge" and not for its truth. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 508-510 (1999).

The defendant objected to this initial testimony by Harte on the ground that it was unduly prejudicial, as the charge of possession of a stolen vehicle had been dismissed before trial. The officer was testifying based on his own knowledge, and the testimony was limited to the facts required to establish the officer's state of knowledge and relevant to why the car the defendant was driving was stopped. *Id.* at 509-510. See *Commonwealth* v. *Rupp*, 57 Mass. App. Ct. 377, 383-385 (2003). Nonetheless, in these circumstances, testimony that the police pulled the defendant over as a result of a radio dispatch would have been

show that Faust consented to the filing of these charges, we will address his contentions on the merits. See *ibid.*; *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797 n.1 (1992).

sufficient to place the police activity in context without stating that the car was stolen. Even if there was error, however, the testimony was duplicative. There was no objection to later testimony by Harte and other officers to the effect that the defendant was driving a stolen car when he was arrested. The evidence against the defendant of the various offenses of which he was convicted was also overwhelming.

The defendant also contests the admission of Timothy Lewis's testimony that his car had been stolen. The thrust of his argument is that the prejudicial impact of this evidence substantially outweighed its probative value. See Mass.G.Evid. § 403 (2011). Lewis's testimony was relevant to a live issue at trial, i.e., whether his welding equipment was in fact stolen. The analysis of any undue prejudice was "entrusted to the trial judge's broad discretion and . . . not [to be] disturbed absent palpable error." *Commonwealth* v. *Sylvia*, 456 Mass. 182, 192 (2010), quoting from *Commonwealth* v. *Simpson*, 434 Mass. 570, 578-579 (2001). The judge did not abuse her discretion.

The defendant next asserts that the trial judge precluded him from impeaching Officer Harte with his testimony from the suppression hearing. In fact, the judge permitted the defendant to continue questioning Harte concerning the prior statement, ruling only that defense counsel could not read the suppression hearing testimony into the record. The inconsistency between the suppression hearing statement and Harte's trial testimony was minor and related to a collateral matter (whether the defendant was already in the police wagon when Harte arrived). The trial judge acted within her discretion in setting the boundaries of impeachment. See Mass.G.Evid. § 611(b)(1) (2011) ("The trial judge may restrict the scope of cross-examination in the exercise of judicial discretion"). Cf. *Commonwealth* v. *Haggett*, 79 Mass. App. Ct. 167, 175-176 (2011) (noting judicial discretion in allowing cross-examination as to collateral matters).

The defendant finally claims that the admission without objection of a page of a police journal, which reflected that Alexander Amacon was the owner of the iPod and a GPS unit,[5]

---

[5]This exhibit also stated that Lewis and Emond were the owners of their respective property, but the defendant admits with respect to those owners that

created a substantial risk of a miscarriage of justice as to that count of the complaint. The Commonwealth concedes that the journal was admitted in violation of the defendant's right to confront witnesses against him. See *Crawford* v. *Washington*, 541 U.S. 36, 52 (2004); *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 310 (2009). However, Officer Harte testified twice without objection that Amacon came to the police station to claim the iPod and GPS and was in fact the owner of both items. The police journal was cumulative of this testimony. Moreover, the Commonwealth was not required to prove that any particular person was the owner of the items. See *Commonwealth* v. *Cromwell*, 53 Mass. App. Ct. 662, 664-667 (2002). The jury could infer beyond a reasonable doubt that the items were stolen given the circumstances in which they were found and the defendant's fabricated story regarding the iPod. The error did not give rise to a substantial risk of a miscarriage of justice.

*Judgments affirmed.*

---

the journal was cumulative of their live testimony and therefore did not give rise to a substantial risk of a miscarriage of justice.