NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-244

COMMONWEALTH

vs.

PAUL E. CORMIER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was convicted of indecent assault and battery on a person over fourteen, G. L. c. 265, § 13H, and two counts of larceny over $1,200, G. L. c. 266, § 30 (1).  On appeal, the defendant argues that the trial judge erred in denying his motion for a required finding of not guilty with respect to all three charges.  We affirm.

Background.  We summarize the trial facts, as the jury could have found them, viewing the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  The defendant's sister adopted Amelia[1] from China in 2016 shortly before Amelia turned fourteen

_____

[1] A pseudonym.

years old.  Less than two years later, the defendant's sister died and the defendant became the legal guardian of Amelia and her twelve-year-old sister, Brielle.[2]  The sisters moved in with the defendant and his wife.  Amelia was fifteen years old at the time.

Shortly after she moved in, the defendant asked Amelia to give him back massages.  After she turned seventeen, the defendant started asking Amelia to massage his thighs and upper leg and asked her to sit on his back, which made Amelia uncomfortable.  The defendant would also regularly spank Amelia on her "butt."  Sometimes Brielle was around but his wife was not.

The defendant also began to tickle Amelia after she turned seventeen.  The tickling "happened a lot . . . sometimes it would be in the car, or the living room, or kitchen, or in my room, or in the bathroom."  Contrary to the defendant's present assertion, Amelia testified on direct that she did not want the defendant to spank or tickle her and that, in response, she "would say 'no' or 'stop', but that didn't work; or to try push him away, but that didn't work."  During one tickling episode, Amelia's shirt slid up and exposed her abdomen.  The defendant continued to tickle her stomach and went lower on her body,

---

[2] A pseudonym.

tickling her "girl parts." The defendant touched Amelia below her belly button but above her pubic hair. After Amelia told a family friend about the spanking and tickling, the Department of Children and Families (DCF) removed Amelia and Brielle from the defendant's home.

When the defendant became the legal guardian for the children, he was designated as the representative payee for each child's Social Security survivor benefits. The defendant opened two bank accounts in which to deposit these funds: one joint account for Amelia and himself, and one joint account for Brielle and himself. In February of 2019, the defendant's surviving sisters became conservators for the children, allowing them to view statements from the bank accounts, dating back to their creation in 2018. They asked the defendant to put their names on the children's accounts, but he declined to do so.

The bank statements, which were admitted into evidence, indicated that while the girls were living with the defendant, he had spent some of the Social Security funds for the benefit of the children. However, after the girls were removed from his care, the defendant transferred $12,000 to $13,000 of the money from the joint accounts to his own personal bank account.

The defendant was charged with indecent assault and battery on a person over fourteen, G. L. c. 265, § 13H.[3]  The Commonwealth also charged the defendant with two counts of larceny, G. L. c. 266, § 30 (1), for stealing the Social Security surviving child benefits of the girls.

Discussion.  1.  Indecent assault and battery.  The defendant argues that the Commonwealth presented insufficient evidence that he committed an indecent touching of Amelia without her consent.  "To prove indecent assault and battery on a person age fourteen or older, the Commonwealth is required to establish that the defendant committed 'an intentional, unprivileged, and indecent touching of the victim.'"  Commonwealth v. Benedito, 95 Mass. App. Ct. 548, 549 (2019), quoting Commonwealth v. Kennedy, 478 Mass. 804, 810 (2018).  The touching must also be without the victim's consent.  Commonwealth v. Shore, 65 Mass. App. Ct. 430, 431 (2006).

Conduct is "indecent" when it is "fundamentally offensive to contemporary moral values . . . which the common sense of society would regard as immodest, immoral and improper [quotation omitted]."  Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 43 (1985).  "The intentional, unjustified touching of

---

[3] The prosecutor at trial explained to the judge that the Commonwealth was charging the defendant's tickling of Amelia's abdomen as the indecent assault and battery.

4

private areas such as 'the breasts, abdomen, buttocks, thighs, and pubic area of a female' constitutes an indecent assault and battery" because these are "sexual parts of the body." Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 625 (2004), quoting Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184 (1991). "Improper sexual overtones violative of social and behavioral expectations can explain physical contact that may otherwise be ambiguous [quotation omitted]." Commonwealth v. Miozza, 67 Mass. App. Ct. 567, 572 (2006). As part of this assessment, we consider "whether there is a disparity in age and sophistication between assaulter and victim; whether there is an existing relationship between them; and whether there is evidence of surreptitious behavior or the use of force." Commonwealth v. Colon, 93 Mass. App. Ct. 560, 563 (2018).

When evaluating a claim of insufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Questions of credibility are to be resolved in the Commonwealth's favor, and circumstantial evidence is sufficient to establish guilt beyond a reasonable doubt." Commonwealth v. Miranda, 458 Mass. 100, 113 (2010), cert. denied, 565 U.S. 1013 (2011).

5

Viewed in the context of the other unwanted physical contact to which the defendant subjected Amelia, and the inappropriate sexual character of this physical contact, the Commonwealth satisfied its burden of proving beyond a reasonable doubt that the defendant's tickling of Amelia's lower abdomen and upper pubic region in this case amounts to an indecent touching.  See Rosa, 62 Mass. App. Ct. at 625-626; Commonwealth v. Lavigne, 42 Mass. App. Ct. 313, 315 (1997).  Cf. Commonwealth v. Cruz, 93 Mass. App. Ct. 136, 142 n.2 (2018) (Milkey, J., concurring; touching of the abdomen alone may not be enough).

The evidence was sufficient to establish that Amelia did not consent to the defendant touching her.  In addition to testimony supporting a finding that Amelia said "no" and "stop" when the defendant tickled her and that he did not heed her requests, the jury also properly could consider the defendant's age; Amelia's age; the defendant-victim relationship; Amelia's emotional vulnerability; and the defendant's knowledge of Amelia's immaturity, all of which were considerations that supported the jury's finding that Amelia did not consent.

2.  Larceny.  The defendant argues that the Commonwealth failed to establish that the defendant took "the property of another," which is a necessary element of larceny under G. L. c. 266, § 30.  To convict the defendant of larceny, "the Commonwealth is required to prove the 'unlawful taking and

6

carrying away of the personal property of another with the specific intent to deprive the person of the property permanently.'" Commonwealth v. Mills, 436 Mass. 387, 394 (2002), quoting Commonwealth v. Donovan, 395 Mass. 20, 25-26 (1985). The jury may find the "property of another" element satisfied if they find that the property at issue "belonged to someone other than the defendant." Commonwealth v. Souza, 397 Mass. 236, 238 (1986).[4]

The property at issue in this case was a series of payments the children received as Social Security benefits pursuant to 42 U.S.C. § 402(d) following the death of their mother. As the children's guardian, the defendant was assigned to be the "representative payee" with respect to the benefit funds, but the money never became his property.[5] The Commonwealth therefore

---

[4] Compare Donovan, 395 Mass. at 29 n.6, quoting Reader v. State, 349 A.2d 745, 747 (Del. 1975) ("the phrase 'of another' 'simply describes the subject of theft as property . . . which [the] defendant has no right to possess'"); Commonwealth v. Cromwell, 53 Mass. App. Ct. 662, 665 (2002).

[5] This is evidenced by the fact that the defendant's use of the money was subject to legal restrictions. See Garvey v. Worcester Hous. Auth., 629 F.2d 691, 695 (1st Cir. 1980), cert. denied, 450 U.S. 925 (1981); 20 C.F.R. § 404.2040 (a) (1) (1989) ("We will consider that payments we certify to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items").

presented sufficient evidence from which the jury could find that the funds were "property of another" under the statute.

According to the bank statements, which were admitted into evidence, after the children were removed from the defendant's custody by DCF, the defendant transferred approximately $12,000 to $13,000 from the joint accounts into his personal bank account.  By transferring the funds from the joint accounts to his personal account, the jury could have inferred that the defendant intended to permanently deprive the children of that money.  See Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 28 (2003) (larceny by stealing established where defendant "transferred control [of property] to herself").

Judgments affirmed.

By the Court (Henry, D'Angelo & Hodgens, JJ.[6]),

Assistant Clerk

Entered:  April 8, 2024.

---

[6] The panelists are listed in order of seniority.